W. F. WILSON & SON, Appellant, v. RUSSLER & GNAGI, Respondent.

**Kansas City Court of Appeals, January 6, 1902.**

1. **Contracts:** PLEADING: EVIDENCE: INSTRUCTIONS: VARIANCE. Instructions summarized in the opinion, relating to the insurance of certain property, are condemned for the reason that they are unsupported by the evidence and there is a variance between the evidence and the pleading, and the instruction submits a defense at variance with the pleading.

2. **Sales:** DAMAGES: PROFITS: INSTRUCTIONS. An instruction relating to the measure of damages for failing to deliver certain sawlogs according to agreement told the jury to take in consideration the net profit the purchaser could have made had said logs been delivered. *Held*, fatally bad, since it allows damages remotely consequential and resting on mere speculation.

3. ——: ——: ——: ——: PLEADING. The rule of damages for failure to deliver an article sold is the difference between the agreed and the market price, and to recover more, some special circumstances under which the contract was actually made and which were communicated at the time must be pleaded and shown by the evidence, and the instruction must hypothecate such circumstances and the communication thereof, or it is bad.

Appeal from Cole Circuit Court.—*Hon. D. W. Shackleford,* Judge.

REVERSED AND REMANDED.

*Silver & Brown* for appellants.

(1) The first instruction given for the defendants is erroneous. The contract, it will thus be seen, required the defendants, not the plaintiffs, to keep the mill property in-

sured, and the instruction is therefore directly in the face of the written agreement of the parties and should not have been given. Authorities *passim.* (2) Again, the testimony of both plaintiffs and defendants was to the effect that defendants distinctly refused their consent to any insurance after November 1, 1896; in fact, repudiated their written obligation that they, "Russler & Gnagi should keep the property insured." (3) Defendants' instruction states an incorrect rule on the measure of damages in permitting a recovery for profits. Taylor v. Maguire, 12 Mo. 314; Callaway, etc., v. Clark, 32 Mo. 305; Northrup v. Cook, 39 Mo. 208; Harrison Wire Co. v. Hardware Co., 97 Mo. 289.

*Edwards & Edwards* and *L. A. Schirmer* for respondents.

(1) It makes no difference whether Wilson or defendants took out the policy. Defendants paid the premium and that was all Wilson had the right to, even under his own view. (2) If the court should hold that the mortgage was the contract, it was perfectly competent to change it or make another by parol, and the authorities cited by appellants fully sustain this view. The court will observe that when this contract was made no amount was specified in the mortgage. But for some reason $1,500 was procured; afterwards it was reduced by Wilson to $1,000. Now we ask the court, what part of the mortgage was changed? (3) The first instruction for defendants is attacked on the ground that we ask the jury to find for defendants if they believe plaintiffs failed to take out insurance, etc. There is nothing in this objection. (4) This instruction simply leaves it to the jury, to say what the damages shall be, had the plaintiffs owned the logs and defendants could have gotten them and sawed them into lumber. Again, if the court did not give a proper instruction as to the measure of damages, it is now too late for plaintiffs to object as they failed

to ask any.  But the court correctly instructed the jury, as will appear from the following authorities:  Peltz v. Eichele, 62 Mo. 171; United States v. Behan, 110 U. S. 168, also 338; 5 Am. and Eng. Ency. of Law, title, "Damages;" Wood's Maynes on Damages, page 82; Devlin v. Mayor, etc., 63 N. Y. 8; Nat. Filtering Oil Co. v. Citizens Ins. Co., 106 N. Y. 535.

SMITH, P. J.—The plaintiffs sued the defendants on three several promissory notes, two of which were for $500 each, and the other for $160.

The defendants in their answer pleaded:   (1) That at the time they (defendants) purchased said mill the plaintiffs agreed with them (defendants) that if they (defendants) would furnish the necessary amount to pay the cost of the insurance that they (plaintiffs) would take out a policy thereon in some responsible insurance company in the name of the defendants, if the latter would assign such policy to plaintiffs as a further security for the payment of said notes, the plaintiffs at the time of the sale of said mill property having taken from defendants a mortgage on the same to secure the payments of said notes.

It was further alleged in said answer that notwithstanding the defendants had furnished plaintiffs with the amount necessary to pay the cost of keeping said property insured, they had refused to so cause the same to be issued in the name of defendants as had been agreed between them, but on the contrary, plaintiffs had caused it to be insured in their own names.   And it is further alleged that plaintiffs in their application for such insurance wrongfully stated that they were the owners of the subject thereof; that subsequently said mill property was destroyed by fire, and that in consequence of the wrongful acts of the plaintiff said policy was invalid and the plaintiffs were unable to collect the amount of the loss thereunder which, had it been collected, would have, in the hands

of the plaintiffs, discharged said two $500 notes, wherefore and in consequence of all which the plaintiffs were not entitled to recover on said notes, etc. And (2) that the plaintiffs had sold the defendants a certain sawmill and two hundred thousand feet of sawlogs, banked on the Osage river in this State, for $1,600, and that said two $500 notes were given to the plaintiffs by defendants as a part of the purchase price of said sawmill and logs; that the defendants were unable to get possession of the logs so purchased, beyond a small number out of which when sawed into lumber they were enabled to realize ninety-one dollars; that they notified the plaintiffs of their inability and failure to get possession of said logs and that plaintiffs had refused to turn over the same to defendants after demand.

It was further alleged in the defendants' said answer that if "the plaintiffs had turned over to them the logs so purchased, they would have realized, after sawing the same into lumber at their mill, an amount sufficient to have discharged the two said five hundred dollar notes, and besides would have made an additional profit to compensate them for their trouble and labor in sawing said logs into lumber, and that by the reason of the failure of plaintiffs to carry out their said contract in this regard they were damaged in the sum of two thousand dollars," which they pleaded as a counterclaim, etc.

These allegations of new matter so set up in the defendants' answer were put in issue by plaintiffs' replication. There was a trial which resulted in judgment for defendants for $1,160, and from this plaintiffs have appealed. The principal errors complained of by plaintiffs relate to the action of the trial court in the giving of instructions for defendants.

I. The plaintiffs' first ground of appeal is that the trial court erred in the giving of the defendants' first instruction which declared to the jury that if the defendants bought of plaintiffs a certain sawmill, etc., for $1,600, paying $600 of that sum in cash and executing the notes sued on for the bal-

ance of the purchase price, and that under the contract of pur-
chase the defendants bound themselves to secure said notes by
a mortgage on said mill and "that plaintiffs were to procure a
policy of insurance on said mill property for $1,500 in a safe
and reliable insurance company; that the premium of said
insurance was to be paid by said defendants, and that said
defendants, in pursuance of said contract, executed the notes
and mortgages aforesaid; that plaintiffs procured said policy
and that it was agreed that the said policy should be reduced
to $1,000, and that plaintiffs should procure a policy in some
solvent and reliable insurance company for said amount *in the
name of the defendants,* with loss, if any, payable to plaintiffs
as their interest might appear, the premium of which was to be
paid by defendants as a security in the event said sawmill prop-
erty should be burned, and that said *plaintiffs failed to procure
the policy aforesaid in the manner they had agreed to do,* and
the mill property was afterwards destroyed by fire, and by the
failure of the plaintiffs to comply with their said contract in
the taking out of said policy of insurance, if the jury find they
did agree to do so, defendants have been damaged, then the
jury will allow defendants such sum as they may believe from
the evidence they have been *damaged by reason of the failure
of the plaintiffs to procure said policy of insurance not to ex-
ceed* $1,000."

During the progress of the trial it was developed by the
testimony of defendant Russler that the contract between the
plaintiffs and the defendants in respect to the insurance of the
mill was in writing and embodied in the mortgage referred to
in defendants' answer and that the defendants had no further
agreement with plaintiffs in respect to insurance beyond that
contained in the mortgage. The said written contract was
produced in evidence and was as follows, to-wit: It is agreed
that "the said Russler & Gnagi keep the property duly in-
sured against fire, and policies in favor of W. F. Wilson &
Son in case of loss by fire, but this to hold only for so much as

may be due W. F. Wilson & Son, the balance to be paid to Russler & Gnagi." It thus appears by the undisputed and indisputable written agreement of the parties that the defendants, and not the plaintiffs, were bound to keep the property insured to a sum at least equal to the amount of the deferred payments of the purchase money. Said instruction No. 1, in telling the jury that. if they found from the evidence that *plaintiffs agreed* to insure said mill in defendants' names and failed to do so, etc., that plaintiffs were liable in damages, was wholly unsupported and unauthorized by the evidence.

The defendants not only refused to insure said mill as they had bound themselves by their contract to do, but as testified by defendant Russler, they refused to furnish to plaintiffs the premiums required to take out such insurance, although in their answer they allege that they agreed to do that. It is thus plainly seen that this instruction is not only without evidence to support it, but submits a. defense at variance with that pleaded in the answer. Under the allegations of the answer the advancement by defendants to plaintiffs of the insurance premiums was a condition precedent, and until the performance of which by defendants there was no obligation resting on plaintiffs to take out the policies of insurance on the mill. The defendants' said instruction does not require the jury to find that the defendants furnished or offered to furnish the "premium, that is, the money to pay the cost of the insurance." The defense it submits to the jury in theory was so materially variant from that pleaded in the answer as presumably to have been highly prejudicial to the plaintiffs, and ought not to have been given in the form that it was. Even if there had been a parol modification of the written contract, in respect to the insurance, evidence of such modification could not be properly received, especially so over plaintiffs' objections, without such modification had first been pleaded. Harrison v. Railway, 50 Mo. App. 332; Halpin v. School Dist., 54 Mo. App. 371; Lanitz v. King, 93 Mo.

513. And if there was a subsequent material change by parol of the written contract, a new consideration would be required to uphold it in order to render it effective. Bunce v. Beck, 43 Mo. 266; Henning v. Ins. Co., 47 Mo. 425; King v. Greaves, 51 Mo. App. 535. It can hardly be said that the abstract of the record contains any evidence tending to prove the existence of any such parol agreement or supporting consideration.

II. The plaintiffs insist that the defendants' second and fourth instructions, touching the measure of damages, are erroneous.

These instructions in substance told the jury that if it found from the evidence that plaintiffs and defendants entered into a contract whereby the plaintiffs sold to the defendants a sawmill and two hundred thousand feet of sawlogs, the latter being then cut, paid for and banked on the Osage river within easy distance of the situs of said sawmill, and to be turned over to defendants, and that plaintiffs did not have such quantity of logs and failed and refused to turn over the same to defendants, that the verdict should be for defendants on their counterclaim in whatever amount of damages it believed from the evidence they had sustained not exceeding two thousand dollars. "And that in estimating the damages, if any, sustained by reason of the failure of the plaintiffs to deliver said sawlogs, the jury should take into consideration the net profit which defendants could have made had said logs *been delivered and sawed into lumber.*"

Mr. Sedgwick, in his treatise on the Measure of Damages, page 18, states: "Both the English and American courts have generally adhered to the denial of profits as any part of the damages to be compensated, and that whether in cases of contract or tort." And further on the same author states: "Independent, however, of an authority, I am satisfied upon principle that an allowance of damages upon the basis of a calculation of profits is inadmissible. The rule would be in

the highest degree unfavorable to the interests of the community." In Mayne on The Measure of Damage, page 6, it is stated: "It is obviously unfair that either party should be paid for carrying out his bargain on one estimate of its value and be forced to pay for failing in it on quite a different estimate. This would be to make him an insurer of the other party's profits without any premium for undertaking the risk."

Parsons in his work on Contracts, vol. 3 (5 Ed.), p. 182 states: "Profits are excluded not because they are in themselves remote, but because they depend upon contingencies which are so many, various, and so uncertain," etc., "that it would be impossible to arrive at any definite determination of the actual loss by any trustworthy method."

Fleming v. Beck, 48 Penn. 309, was a case brought to recover damages for loss of profit by defective performance of a contract to dress millstones. Judge AGNEW, in delivering the opinion of the court, remarked: "In strict logic it may be said that he who is the cause of loss should be answerable for all the losses which flow from his causation. But in the practical workings of society the law finds in this, as in a great variety of other matters, that the rule of logic is impracticable and unjust. The general conduct and reflections of mankind are not founded on nice casuistry. Things are thought and acted upon rather in a general way than upon long, laborious, extended, trained investigation. Among the masses of mankind, conclusions are generally the result of hasty and partial reflections. Their undertakings, therefore, must be construed in view of these facts; otherwise they would often be run into a chain of consequences wholly foreign to their intentions. In the ordinary callings and business of life, failures are frequent. Few indeed always come up to a proper standard of performance whether in relation to time, quality, degree or kind. To visit upon them *all* the consequences of failure would set society on edge and fill the courts with useless and injurious litigation. It is impossible to compensate for all

losses; and the law, therefore, aims at a just discrimination which will impose upon the party causing them, the proportion of them that the proper view of his acts and attending circumstances would dictate."

Copper Co. v. Copper Co., 33 Vermont, was an action brought to recover special damages for the failure to meet the contract to furnish the copper for manufacturing purposes. It was said by Chief Justice REDFIELD in speaking for the court in that case: "That general damages which the vendee of personal property is entitled to recover for its non-delivery, *whether the price be paid or not, is the difference between the contract price and the market price of the article at the time and place of delivery when the price has advanced together with the money paid on the contract."*

Berry v. Divinel, 44 Maine 255, was an action to recover damages for breach of a contract in not cutting and hauling a large quantity of sawlogs to be cut into lumber. Proof was adduced to show damage resulting from not having a sufficient quantity of logs to stock the mill. The court held: "The measure of damages for the non-delivery of an article is its value at the time and place of delivery. Remote and consequential damages, possible gains, and contingent profits, are not allowed. The damages recoverable are limited to the necessary result of the breach. The purpose of the purchaser, the anticipated disposition of the thing purchased and the probable profits, are not ordinarily the proper subject of damage."

French v. Rumage, 2 Neb. 253, was an action by plaintiff, a merchant tailor, to recover damages for loss of profit resulting from the failure of the defendant to ship certain specified goods which the defendant had sold to him. The court in this case says that the loss of profit which might have been realized from the sale of the goods manufactured involves too many contingencies to be admitted. At best, the court could but approximate to the extent of the manufacture and

sale of clothes by plaintiff. Equally uncertain would be the question of how much would be the probable profit on each garment sold, which must be qualified by the amount of the competition, the value of the labor, the rise and fall of the price of ready-made clothing, the fact whether customers buy for cash or on time, the responsibility of some of the patrons and the like considerations. All these are too uncertain and confused to be tolerated; and any attempt to ascertain damages of this character would more likely result in doing injustice than justice. Other cases, without this State, to the same effect might be cited. Elmstead v. Burke, 25 Ill. 86; Griffin v. Culver, 16 N. Y. 489; Hadley v. Baxendale, 26 Eng. L. & E. 398; Hamlin v. Railway, 38 Eng. L. & E. 335.

It is well settled by the decisions of this State that the vendee is entitled to an indemnity for actual loss sustained by reason of the failure of the vendor to comply with his contract, but in the absence of fraud he has never been allowed damages remotely consequential and resting in mere speculation. Actual loss at the time and place of delivery seems to be the true rule to be extracted from all of the cases in this State. Taylor v. Maguire, 12 Mo. 314; s. c., 13 Mo. 517; Callaway v. Clark, 32 Mo. 305; Harrison v. Hrdw., 97 Mo. 289; Northrup v. Cook, 39 Mo. 208; Koeltz v. Bleckman, 46 Mo. 320; Rickey v. Tenbroeck, 63 Mo. 563.

It is thus seen that the foregoing authorities make it plain that the defendants' instructions now in question go too far. They authorized the jury to find for defendants the kind of damages which the law forbids when the general allegation of the answer in respect to the counterclaim is like that in this case. When anything beyond the difference between the agreed and the market price of the thing sold is sought to be recovered, some special circumstance under which the contract was made must be alleged and shown.

"Now, if the special circumstances under which the con-

tract was actually made were communicated by the plaintiffs (defendants here) to the defendants (plaintiffs here) and were *thus known to both parties,* the damages resulting from the breach of such a contract which they would reasonably contemplate would be the amount of the injury which would ordinarily follow *from such breach of the contract under the circumstances so shown and communicated."* Hadley v. Boxendale, supra; Chalice v. Witte, 81 Mo. App. 84; Shouse v. Neiswaanger, 18 Mo. App. 244; Messmore v. Shot Co., 40 N. Y. 422. The rule above quoted is aptly illustrated by the cases just cited.

Even if such special facts and circumstances, known to the plaintiffs at the time of entering into the contract, as would have entitled the defendants to recover gains or profits as part of their damages, had been alleged in their counterclaim, still, as such special facts and circumstances are not embraced within the hypotheses of their said instructions, they for that reason would still be faulty as not declaring the correct measure of damage in a case of that kind. They neither embody the ordinary rule where it is sought to recover actual loss at the time and place of delivery, nor that where special facts and circumstances known alike to both parties at the time of making the contract are relied on to recover gains or profits, as is seen from the authorities already referred to, and therefore they must be condemned.

Other objections to the said instructions are discussed in the brief of counsel, but in view of what has already been said these need not be noticed.

The judgment must be reversed and cause remanded. All concur.