STATE OF MISSOURI ex rel. BAER, Respondent,
v. STEELE & COMPANY et al., Appellants.

St. Louis Court of Appeals, November 29, 1904.

EVIDENCE: Value of Chattels: Purchase Price. Where the value
of chattels is an issue, proof of the purchase price of such chat-
tels is evidence tending to show the value, sufficient to make out
a prima facie case.

Appeal from St. Louis City Circuit Court.—*Hon. H.
D. Wood*, Judge.

AFFIRMED.

*Edward N. Robinson* for appellants.

There was absolutely no evidence of the value of
the property levied upon in this case. The sorrel horse
and saddle were purchased over three years before
the date of the levy and date of filing bond; plaintiff
testified that she had paid $42.00 for this horse. Such
testimony has no tendency to show the value at the
time of the levy or at the time of the trial and fur-
nishes no evidence to support either an instruction on
the subject of value or the finding of value by the
court. Archer v. Schaeper, 25 Mo. App. 1; Brewing
Co. v. Niederweiser, 28 Mo. App. 233; Miller v. Bry-
den, 34 Mo. App. 602; Stephens v. Springer, 23 Mo.

App. 375; Clark v. Field, 42 Mich. 342; Curtis v. Railroad, 20 Minn. 28.

*Bert F. Fenn* for respondent.

Deane v. Houser, 83 Mo. App. 614, reads: "Proof of the value of converted property ought not to be confined to the very time of the conversion. Testimony tending to prove its value within a reasonable time before or after the conversion is competent on the question of value." In the case at bar the appellants' witness, M. J. Ellis, testified that the bay horse, when asked by the court, Was the horse worth that—a hundred dollars? answered, Yes, sir, cheap, was worth more. And the horse had only been in the possession of Mrs. Baer from the fifth day of February, 1903, that is about forty days, at the time of the levy of the execution. Mrs. Baer testified that she had paid $35.00 for the harness in February, 1903, which was only a short time before the levy; that R. W. Browning made the following statement, referring to Mr. Baer: "At one time told me he was offered $130.00 for said horse," meaning the sorrel horse.

### STATEMENT.

On June 26, 1895, Zeb T. Steele & Co., a corporation, recovered a judgment for $223.72 against Ben Baer, in a justice's court, in the city of St. Louis, a transcript of which was filed in the office of the circuit court, of the city of St. Louis, from which office an execution was issued on said judgment March 16, 1903, and delivered to the sheriff of the city of St. Louis. On March 18th, the sheriff levied upon one bay horse, one sorrel horse, one Mexican saddle and one set of single harness as the property of the defendant in the execution. Emily J. Baer, the wife of Ben Baer, claimed the property as her individual property and made an affidavit to her claim in the form prescribed by the statute, whereupon the plaintiff in the

execution executed and delivered to the sheriff the following indemnifying bond:

"*Know all men by these presents,* That we, Zeb T. Steele & Co. as principal, and Zeb T. Steele and E. N. Robinson as sureties, are held and firmly bound unto the State of Missouri in the sum of three hundred and eighty dollars, to the payment whereof, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals and dated at St. Louis, this nineteenth day of March, A. D. 1903.

"The condition of the above obligation is such, that whereas a writ of execution has issued from the clerk's office of the circuit court, city of St. Louis, being No. 60, returnable to the April term, 1903, of said court, in favor of Zeb T. Steele & Co., and against Ben Baer, and directed to the sheriff of the city of St. Louis, and has been delivered to Joseph F. Dickman, as such sheriff, to be executed by him, and the said Joseph F. Dickman, sheriff, has executed said writ, at the request of said plaintiff, by taking as the property of the said Ben Baer the following described personal property, to-wit: one sorrel horse, 15 hands high, 10 years old; one bay horse, 16 hands high, 5 years old; one Mexican saddle and one single set of harness.

"And whereas, all of said property was claimed by Emily J. Baer, according to the third section of the act of the General Assembly of the State of Missouri, entitled 'An act concerning the duties of the sheriff and marshal in the county of St. Louis, in relation to the levy and sale of such property, under execution or attachment, as may be claimed by third persons,' approved March 3, 1855, and in the manner therein mentioned. Now, if the aforesaid plaintiff shall indemnify said Joseph F. Dickman, sheriff, against all damages and costs which he, said Joseph F. Dickman, sheriff, may sustain in consequence of such levy, and in consequence of any sale of the property aforesaid, which

may be made under or by virtue of said writ, and moreover shall pay to and satisfy said claimant, and any person or persons claiming title to said property, all damages which said person or persons may sustain in consequence of such levy and in consequence of any sale as aforesaid, then this obligation shall be null and void; otherwise it shall remain in full force and virtue.''

After the delivery of this bond, the property levied upon was duly advertised and sold under the execution. This suit is on the bond to recover the value of the property. The judgment was for plaintiff for the principal of the bond to be discharged on the payment of one hundred and seventy-five dollars, the assessed value of the property. Defendants appealed.

Pending the appeal, Zeb T. Steele departed this life testate and his executor, C. C. Steele, has been made a party defendant herein and has voluntarily entered his appearance to the suit in this court.

The plaintiff's evidence shows that she and Ben Baer have been married seven or eight years. Her father gave her five hundred dollars in cash at the time of her marriage, and he and her sister have aided her financially from time to time as actually needed. At the time of his marriage, Ben Baer had nothing and has not since been able to improve his financial condition. Baer's business before and since his marriage has been buying cows and calves in small lots at the National Stock Yards in East St. Louis, bringing them over the river to St. Louis and peddling them out to dairymen. The evidence shows that he has accumulated no money by his business and has looked to his wife to pay his doctor bills and maintain him, paying her, however, from three to four and one-half dollars per week for his board, when he has money. Plaintiff's evidence also shows that she furnished the money and commissioned her husband to buy the property in controversy for her and on her account, and after its pur-

chase she took charge and controlled it as her individual property, and hired the horses to her husband and others. She keeps a boarding house and reasonably accounted for the money furnished to buy the property, a part of which she borrowed. Her testimony in this respect is corroborated by disinterested witnesses.

Defendant's evidence tends to show that Ben Baer purchased the sorrel horse in his own name and used both horses almost continuously in his business.

The court declared the law as follows for the plaintiff:

"The court declares the law to be that if the relator, Mrs. Emily J. Baer, purchased the horses, saddle and harness, in question, with money either given to her by her father, or which she has earned by her own labors or borrowed, then the same continued her separate property, and was not liable to be taken by any process of law for the debts of her husband."

BLAND, P. J. (after stating the facts).—1. Defendants contend that there was no evidence of the value of the property in controversy and for this reason the motion for new trial should have been sustained. The evidence of the value of the property is somewhat meagre but there is some evidence of its value. Ellis, from whom the bay horse was purchased, testified that he was bought cheap and was actually worth more than was paid for him. Browning, referring to the sorrel horse, which was purchased for one hundred dollars, testified that he was well worth one hundred and thirty dollars at the time he was purchased. Plaintiff testified that she paid thirty-five dollars for the harness a few days before the levy was made. The price paid for an article furnishes some evidence of its value, specially when the time of purchase is near the time of conversion. Miller v. Bryden, 34 Mo. App. 602; Stevens v. Springer, 23 Mo. App. 375.

We think there is some evidence from which the court, sitting as a jury (a jury having been waived), could have made a fair estimate of the value of the property and refuse to reverse the judgment on the ground that there was no evidence of the value of the property in controversy.

2. Defendant insists that the evidence indubitably shows an attempt on the part of plaintiff to defeat the claim of her husband's creditors. If we had any substantial doubt that plaintiff's claim to the property was not bona fide, we would, in a case of this kind, be bound to resolve the doubt in favor of the finding of the trier of facts, but an attentive reading of all the evidence in the record satisfies us that plaintiff's claim is bona fide; that she purchased the property with money earned by her own labor and borrowed from her friends; that the husband had not a dollar's interest in any of it, and that plaintiff was the sole owner.

The judgment is for the right party and is affirmed. All concur.