# GEORGE R. MARTIN, Respondent, v. BUNKER-CULLER LUMBER COMPANY, Appellant.

**Springfield Court of Appeals, December 2, 1912.**

1. **DAMAGES: Breach of Contract.** In an action for breach of contract the damages recoverable are such as may fairly and reasonably be considered as either arising naturally from such breach or as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

2. ——: ——: **Special Circumstances.** In an action for damages for breach of contract, if the special circumstances under which the contract was actually made were communicated and thus known to both parties the damages from the breach would be the amount of injury which would ordinarily follow from a breach of the contract under the special circumstances so known and communicated.

3. ——: ——: ——: **Loss of Profits.** In an action for damages for breach of contract it appeared that the defendant had contracted to furnish plaintiff oak timber sufficient to make 600,000 wagon hubs and to deliver one fifth of this timber every year for five years. On the strength of this contract plaintiff, under the agreement, spent several thousand dollars installing a plant on defendant's land to manufacture the hubs and also found a purchaser for the manufactured hubs but was forced to close the plant because defendant failed to comply with the contract. The evidence showed there was no other hub timber that plaintiff could have purchased to keep his mill running. *Held*, that plaintiff would be entitled to recover as his damages the profits that he would have realized out of the contract based on the market value of the manufactured hubs, and that under the circumstances it could not be said that plaintiff was limited in his damages to the difference between what he paid for the hub timber and the market value of such hub timber.

4. ——: ——: ——: ——. Where the defendant has agreed to sell plaintiff an article which, in turn the plaintiff is to manufacture into another article and to make his profit on the resale of the manufactured article and the evidence shows that the parties contemplated the manufacture and resale of the article at the time the contract was made, then upon breach of the contract by the defendant, the plaintiff should recover as damages his loss of profits.

5. ——————: ——————: ——————: ——————: Special Contract for Resale: Evidence: Market Value. In an action for damages on a breach of contract where it is shown that defendant failed to deliver several hundred thousand feet of hub timber which plaintiff was to manufacture into hubs and sell and where the circumstances and facts surrounding the contract, and known to defendant, justified submitting as plaintiff's measure of damages, the difference between the cost of manufacturing and the market price of the manufactured hubs; but where it was not alleged in the petition or shown by the evidence that defendant was notified before the contract was entered into or thereafter that plaintiff had a special contract for the sale of the hubs, such special contract could be introduced only as tending to show the value of the manufactured hubs but would not entitle plaintiff to an instruction allowing him the difference between the cost of manufacture and the contract price for which he had sold the hubs.

6. PLEADING: Breach of Contract: Sufficiency of Petition. In an action for damages for breach of contract to furnish a large quantity of hub timber, the petition is examined and held sufficient to state a cause of action.

7. APPEAL AND ERROR: Objections to Testimony: When Not Reviewable on Appeal. The appellate court will not review objections to the introduction of testimony where the appellant did not ask a reversal of the judgment on account of errors in the introduction of such testimony.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*A. W. Lincoln, Wm. P. Elmer, Orchard & Cunningham* for appellant.

(1) The proper measure of damage is the difference between the market value of the hub timber at the place of delivery and the contract price. If there is no market value of such timber at the place of delivery, the value at the nearest available market may be shown and allowances made for transportation charges. 24 Am. & Eng. Ency. Law, 1150-54; Wall v. Storage Co., 87 S. W., 574, 112 Mo. App. 659; Marks v. Cooperage Co., 103 S. W. 20. (2) The burden of

proving the market value and consequential damages is upon the plaintiff. 24 Am. & Eng. Ency. Law, 1154. (3) The testimony for plaintiff admitted as to his damages and losses complained of by him were purely speculative, and were not proper elements of damages under this contract. Instruction No. 1 for plaintiff, based on this testimony, was erroneous. Defendant's refused instructions properly declares the law. 24 Am. & Eng. Ency. Law, 1154; Wall v. Storage Co., 87 S. W. 574, 112 Mo. App. 659; Marks v. Cooperage Co., 103 S. W. 20.

*Munger & Lindsay* and *Lin Shuck* for respondent.

(1) It is apparent that Martin was unable to supply his hub mill with suitable material for the year's run and his measure of damages is certainly the difference between the cost of material, the cost of labor, and placing same on board cars and the price at which he had the product sold. McGinnis v. Hardgrove, 163 Mo. App. 20; Morrow v. Railway, 140 Mo. App. 200; Dean v. Railroad, 199 Mo. 386; Frick v. Kansas City, 117 Mo. App. 488.

GRAY, J.—This appeal presents the vexed and difficult problem as to when the profits, lost by the party defeated of his contract by the wrongful act of the other contracting party, can be recovered in a suit for damages based on a breach of the contract.

The defendant, in March, 1909, owned a sawmill at Bunker, Mo., and also a large body of timber in that vicinity. On the ninth of March, the plaintiff and defendant entered into a contract in writing, by the terms of which the defendant was to furnish plaintiff, free of rent for five years, a suitable site at Bunker for a hub manufacturing plant. Also agreed to sell and deliver to the plaintiff on cars at the hub yard during the said term of five years, sufficient oak timber to make 600,000 wagon hubs, and to deliver one-

fifth, or 120,000 of said hubs during each year of the contract. The delivery was to be made at the rate of 10,000 per month, with a proviso that the number might be exceeded during the months of September, October, November and December, of each year, during which four months a total delivery of 80,000 hubs was authorized. The contract contained the further provision that in case the 80,000 hubs were delivered in said four months, the delivery during the months of April, May, June and July, following, might be reduced accordingly, and that if an average of 20,000 hubs had been delivered during said fall months, the delivery during the other months should not exceed 5,000 per month.

The plaintiff agreed to erect at his own cost upon the ground so furnished by the defendant, a hub manufacturing plant, with all necessary warehouse buildings, and have the same ready for operation not later than November 1, 1909, and to pay the defendant ten cents per hub for all timber delivered to him under the contract. The contract also provided that all timber to be delivered was subject to inspection by the plaintiff before loaded on the cars, and that the defendant was to be released of his obligation to furnish the hubs in case it became impossible to make delivery of them owing to defendant's inability to obtain said hub timber along with its regular logging operations.

The evidence on the part of the plaintiff tended to prove that after the execution of the contract, the plaintiff went to Chicago and there made a contract for the sale of all of his hubs, and that he purchased in Ohio all the machinery for his plant and caused the same to be shipped and erected on the land of the defendant, and was ready to receive hub timber on November 1, 1909, and so notified the defendant; that the defendant did not furnish him any hubs until the latter

part of January, 1910, and then only about 2500, and to August 1, 1910, only furnished timber for about 10,000 hubs; that the plaintiff repeatedly made demands on defendant for the hub timber, and kept expert mill men ready to operate the hub mill until the first of August, 1910, at which time he let them go.

The plaintiff offered further testimony tending to prove that he had inspected hub timber for about 140,000 hubs, and that defendant shipped such timber to its sawmill and did not deliver the same to plaintiff's hub mill.

The defendant admitted it furnished no hub timber until in January, and that to the first of August, 1910, it had delivered less than 10,000 hubs; that during said time it was cutting, in its regular logging operations, but little timber that met the requirements for hubs, and that much of it that really did meet the requirements was rejected by the plaintiff's inspector; that if plaintiff had not abandoned his contract, defendant would have been able in the future, to have supplied him with the amount of hub timber called for in the contract.

The case was tried before a jury in Shannon county, where it had been taken on change of venue from Dent county, resulting in a verdict in favor of the plaintiff for $1317.27, which amount was reduced by a set-off claim of the defendant of $67.27, leaving a balance of $1250, for which a judgment was rendered against the defendant. In due time the defendant perfected its appeal to this court.

The defendant has seen fit to limit the issues in this court to three, and we will limit our investigation accordingly.

It is appellant's first contention that the proper measure of damages is the difference between the market value of the hub timber at the place of delivery and the contract price.

167 Mo. App.—25

The recognized leading case is that of Hadley v. Baxendale, 9 Exch. 354, and it has been approved by most of the American courts, and by the Supreme Court of this State in Mark v. Cooperage Co., 204 Mo. l. c. 265, 103 S. W. 20. The rule as stated in that case is, that where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it; and that if the special circumstances under which the contract was actually made were communicated, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated; but, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.

In Hammond v. Beeson, 112 Mo. 190, 20 S. W. 474, Judge MacFarlane said: "It is impossible to lay down any rule of damages, for breach of contract, that can be justly applied to all cases of any particular class. Each case must, in a great measure, be determined upon equitable principles, upon the particular facts by which it is attended, the controlling principle being that the one suffering from the breach should be fully compensated for all losses sustained. Other rules are merely aids to that end."

The evidence discloses that there was no other hub timber that plaintiff could have purchased to keep his mill running, and therefore, he was at the mercy of the defendant for such timber. He had erected on the land of the defendant a hub mill for the purpose of manufacturing into hubs, timber then growing on defendant's land, to be sold on the market. It must have been the contemplation of both parties that plaintiff intended to manufacture and sell the hubs at a profit, and thereby, reimburse him for his expenditures and his equipment and the cost of manufacturing the hubs. That it was a special contract with the defendant is evidenced by the fact that the hub mill was to be erected on defendant's premises, and the defendant was to furnish water necessary for the operation of the same. Under these circumstances, it cannot be said that plaintiff's damages are the difference between what he paid for the hub timber and the market value of such hub timber.

In Hammond v. Beeson, supra, the plaintiff sued for special damages for breach of a contract to grade five miles of railroad for the defendant. In discussing the plaintiff's damages, the court said: "It is a clear proposition, and one well settled by the authorities, that, where there is an express contract, the contract itself should furnish the basis for estimating the damages, if they can be ascertained thereunder with sufficient certainty. The contract price, in a contract of this character, would not be the reasonable measure of the damage, but the benefits plaintiff could have obtained, had he been permitted to perform the work at the contract price. The profits plaintiff expected to realize out of the contract were the real consideration that induced him to make it. These became a part and parcel of the contract itself, and to these he ought to be entitled. If the contract was terminated or performance prevented by the defendants, whether through inability or design, the purposes of plaintiff

were defeated and the loss of profits sustained. The profit was the full measure of his possible gain, if he had been permitted to complete this contract, without unreasonable delay or interference. If he performed no part of it and incurred no expense, all the damages he could justly demand would be the loss of the profits he could have realized. . . . This rule is equitable and just and furnishes full and adequate compensation for all injury sustained.''

The evidence shows that plaintiff was compelled to rely on defendant for his hub timber, and could not have secured the same at any other place. If defendant's theory is correct, then notwithstanding the parties entered into the contract by which the plaintiff was to and did expend about $6000 equipping his hub mill on the land of the defendant, in order to manufacture the timber furnished by defendant, and although the defendant had not furnished a single piece of timber for a hub, yet if the value of the hub timber was no greater than plaintiff had agreed to pay defendant for it, the plaintiff could not be allowed any damages.

In Jordan v. Patterson, 35 Atl. 521, the Supreme Court of Kentucky, in a similar suit, said: ''In the present case the plaintiffs claimed that at the time of delivery there was no market in which they could procure such goods as the defendants were to deliver to them. This was a fact which might be proved by the testimony of any person who had knowledge on the subject. . . . The defendants had knowledge that the plaintiffs contracted for these garments in order to resell them to others. They were chargeable with knowledge that the plaintiffs would make such profits as the market price of such goods would give them. . . . In respect to this item of damage, the rule above stated furnished the proper test. In restoring an injured party to the same position he would have been in if the contract had not been broken, it is neces-

sary to take into the account losses suffered, as much as profits prevented. And whenever the loss suffered, or the gain prevented results directly from a circumstance which may reasonably be considered to have been in the contemplation of the parties when entering into the contract, the plaintiff should be allowed to prove such loss."

The rule allowing plaintiff to recover damages for loss of profits, where the defendant has agreed to sell him an article, which, in turn, the plaintiff is to manufacture into another article, and to make his profit on resale of the manufactured article, is generally recognized by the authorities, when the evidence shows that the parties contemplated the manufacture and resale of the article at the time the contract was made. [Jordan v. Patterson, supra; Ford Hardwood Lumber Co. v. Clement, 135 S. W. 343; Leggitt Spring & Axle Co. v. Michigan Buggy Co., 64 N. W. 466; Trego v. Arave, 116 Pac. 119, 35 L. R. A. (N. S.) 1021; Wakeman v. Wheeler & W. Mfg. Co., 101 N. Y. 205, 4 N. E. 264; Cloe v. Rogers, 121 Pac. 201, 38 L. R. A. (N. S.) 366.]

The case of Wilson & Son v. Russler et al., 91 Mo. App. 275, is not in conflict with the rule we have just announced. In that case there was a sale of a sawmill and 200,000 feet of saw logs then cut and lying on the banks of the Osage river, within a short distance of the sawmill. The seller did not deliver the logs, and in an action on the contract the court told the jury that in estimating the damages by reason of the failure to deliver the logs, the jury should take into consideration the net profit which defendants could have made had said logs been delivered and sawed into lumber. The Kansas City Court of Appeals reversed the case and held that such damages were not recoverable under the issues. After citing the authorities, the court said: "It is thus seen that the foregoing authorities make it plain that the de-

fendants' instructions now in question go too far. They authorized the jury to find for defendants the kind of damages which the law forbids *when the general allegation of the answer in respect to the counterclaim is like that in this case.* When anything beyond the difference between the agreed and the market price of the thing sold is sought to be recovered, some special circumstance under which the contract was made must be alleged and shown. 'Now, if the special circumstances under which the contract was actually made were communicated and were *thus known to both parties,* the damages resulting from the breach of such a contract which they would reasonably contemplate would be the amount of the injury which would ordinarily follow *from such breach of the contract under the circumstances so shown and communicated.' "

Instead of being in conflict with our position, this case sustains it. There were no special circumstances shown in that case, but the question was submitted solely on a contract of sale. Not so here, however, as the petition in this case alleges the special circumstances under which the contract was entered into, and clearly showing that both parties contemplated that the whole purpose and object of plaintiff in entering into the contract, was to secure the hub timber and manufacture the same into hubs and to sell the same at a profit.

It is next claimed that the plaintiff's testimony was insufficient to authorize the recovery of loss of profits. The plaintiff testified that it cost him thirty cents to make a set of hubs, and the timber cost him forty cents, and that he sold the hubs for $1.10 to $1.75 a set; that he had a contract for the sale of the hubs at Chicago, by which he received ninety cents for 8 inch hubs, $1.10 for 9 inch hubs, $1.55 for 9½ inch, and $1.75 for 10⅛ inch, per set of four hubs; that these prices were f. o. b. Bunker.

It was not alleged in the petition, or shown by the evidence that the defendant was notified before the contract was entered into or any time thereafter that plaintiff had a special contract for the sale of his hubs, and therefore, it may well be said that plaintiff was not entitled to recover the difference between what it cost to manufacture his hubs, and the contract price for which he had sold them. The court, however, did not submit that issue to the jury, and therefore, the question needs no further consideration.

The testimony was admissible, however, for the purpose of showing the contract price, as the rule seems to be that the contract price is competent evidence tending to prove the value. [Abbit v. St. Louis Transit Co., 104 Mo. App. 534, 79 S. W. 496; State ex rel. v. Steele & Co., 108 Mo. App. 363, 83 S. W. 1023; Jordan v. Patterson, supra.]

In Jordan v. Patterson, supra, the plaintiff offered testimony of the prices he was to obtain on a resale, and the court said: "If proof of the terms of these last mentioned subsales was offered for the purpose of showing what the market price of such goods was at the time they were to be delivered, then the evidence should have been received. The market value of any goods may be shown by actual sales in the way of ordinary business."

The plaintiff's testimony stood absolutely uncontradicted, and therefore, we must hold that it was some evidence of the market value of the manufactured product, and authorized the court to submit that issue to the jury. The court did not submit to the jury any loss that the plaintiff sustained by reason of his mill standing idle, thus causing expense for hired help, etc. And to this extent the instruction was really more favorable to the defendant than it was entitled to be. [Morrow v. Railroad, 140 Mo. App. 200, 123 S. W. 1034.]

The last point is, that the petition does not state facts sufficient to constitute a cause of action. This contention cannot be sustained. Separate and apart from that portion of the petition regarding the profits, the petition states a cause of action for damages directly suffered and sustained by the plaintiff, growing out of the fact that under his contract with the defendant, he expended over $5000 in building his mill on the land of the defendant, for the purpose of carrying out his contract, and that the defendant failed and refused to carry out his part of the agreement. These allegations undoubtedly authorized the recovery of nominal damages, and therefore, the petition states a cause of action.

During the trial, the defendant made several objections to the introduction of testimony, and which were overruled. We are not holding that these objections were without merit, but appellant has not asked us to reverse the judgment on account of any errors in the introduction of testimony.

The judgment will be affirmed. All concur.