## CONSUMERS' GLUE COMPANY, Respondent, v. SAMUEL BINGHAM'S SON MANUFACTURING COMPANY, Appellant.

**St. Louis Court of Appeals, January 4, 1916.**

1. SALES: Breach of Contract: Damages. The damages recoverable for the breach of a contract of sale are those arising naturally, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it; and the damage naturally to be expected is the difference between the contract price and the market value, if the goods have a market value, and, if they have not, is the difference between the contract price and the reasonable value.

2. ———: ———: ———: Evidence: Value. In an action against a. vendor for damages for the breach of a contract for the sale of goods having no market value, the reasonable value of the goods may be established by the testimony of those experienced in such value.

3. ———: ———: ———: Instructions. In an action against a vendor, for the breach of a contract for the sale of goods, where plaintiff showed that it had an offer of resale at an advanced price, without showing that the loss to it of the profit on such resale, as the result of a failure to deliver, was in the contemplation of the parties at the time the contract was made, an instruction, declaring that plaintiff was entitled to recover the difference between the contract price and the reasonable value, and authorizing the jury to determine the reasonable value from the evidence of those experienced with the value of the goods or from the advanced price at which plaintiff could have sold them, was erroneous, since a recovery on the theory the goods had a special value was not permissible, in the absence of a showing that such was contemplated by the parties at the time they entered into the contract.

4. ———: ———: ———: Evidence: Admissibility. In an action against a vendor for the breach of a contract of sale, where a witness for plaintiff testified that goods of the character contracted for were not in the market, it was improper to exclude cross-examination as to whether he did not know that similar goods could be purchased in his own local market; but whether such ruling constituted reversible error is not decided.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED AND REMANDED.

*Clarence T. Case* for appellant.

(1)   Before a purchaser is entitled to recover lost profits which he might have made if the vendor had not failed to deliver the goods, he must show a valid sub-sale in contemplation of the parties at the time the original sale was contracted.   Guetzskow Bros. Co. v. Andrews & Co., 92 Wis. 214;  Wilson v. Russler, 91 Mo. App. 275.   (2) A sale like any other agreement, to amount to a contract, must be certain in its terms. This is necessary in order to make a valid sub-sale. Stout v. Hardware Co., 131 Mo. App. 535;  Lynch v. Wright, 94 Fed. 703.   (3)   It is the duty of the party injured by a breach of contract of sale to do all things in his power to prevent or reduce damages flowing from the breach, and if he has a re-sale for the goods he should make every diligent and reasonable effort possible to obtain the goods elsewhere with which to fulfill his sub-contract.   Coal Co. v. Brick Co., 66 Mo. App. 296.   (4) Where goods have no market value, the true measure of damages in this State is the difference between the contract price and their reasonable value as ascertained by witnesses competent to testify as to such reasonable value.   Warren v. Mayer Mfg. Co., 161 Mo. 124;  Bush v. Fisher, 85 Mo. App. 1.   (5) Where special damages like loss of profits are sought to be recovered, the same should be specially pleaded. There is no presumption in the plaintiff's favor that such loss of profits might have been made on a re-sale of the goods in contemplation of the parties at the time the original contract was made.   Koch & Co. v. Merk, 48 Ill. App. 26.

*Wilson & Trueblood* for respondent.

(1)   In determining the amount of damages due for breach of contract or other assumed obligation the

test is whether the damage is natural or within the actual or potential contemplation of the parties at the time the obligation was assumed. 1 Sedgwick on Damages, sec. 142; Hadley v. Baxendale, 9 Ex. 341. (2) Ordinarily when contracts for the sale of chattels are broken by the vendor failing to deliver the property according to the terms of the bargain, the measure of the damage is the difference between the contract price and the market value of the article at the time when and the place where it should have been delivered. 2 Sedgwick on Damages, sec. 734; 35 Cyc. 633; Warren v. Mayer Mfg. Company, 161 Mo. 112. (3) But if the goods are of such a nature that they have no recognized market value the general rule will not apply, but the measure of damages is the difference between the contract price and the reasonable value of the goods which may be determined by those experienced in the value of such goods or by the advanced price at which the buyer may have been able to sell them. 35 Cyc. 636; 2 Sedgwick on Damages, sec. 740; Martin v. Bunker, etc., 167 Mo. App. 381; Wilt v. Hammond, 179 Mo. App. 406; Jordan v. Patterson, 35 Atlantic 521. (4) It was unnecessary specially to plead the damages because the damages were not special damages and because the action originated before a justice of the peace where, in any event, it would have been unnecessary to plead them specially. Lee v. Western Union, 51 Mo. App. 375, 378.

ALLEN, J.—This is an action for the breach by defendant of a contract for the sale by defendant to plaintiff of certain "old composition" taken from used printers' rollers. There was a verdict and judgment for plaintiff below for $350 and the case is here on defendant's appeal.

On or about November 27, 1912, defendant entered into a contract with plaintiff whereby defendant agreed to sell and plaintiff agreed to buy an ac-

cumulation of material spoken of as "old composition," being a mixture of various things pressed into rollers for printing presses, and having been taken from used and discarded rollers. The plaintiff is a corporation having its offices in the city of St. Louis, Missouri. The material in question was at defendant's place of business in Indianapolis. In November, 1912, defendant notified plaintiff by letter that it would soon have its "accumulation of old composition" ready to ship, asking plaintiff for its best quotation thereon. To this letter plaintiff replied, and shortly thereafter an officer of plaintiff corporation went to defendant's place of business in Indianapolis, inspected the material, which, he says, amounted to about fifteen tons, and offered defendant $40 per ton therefor, at defendant's factory at Indianapolis, plaintiff to furnish the bags for shipping the same. This offer was accepted through a letter written by defendant to plaintiff, and plaintiff shipped bags to defendant to be used in shipping the material. Defendant, however, did not ship the same, and later declined to do so.

There is no question here relative to plaintiff's right to recover as for a breach of this contract. The evidence established beyond doubt the breach of the contract by defendant; and the questions involved in the appeal pertain to the measure of plaintiff's damages in the premises.

The evidence for both plaintiff and defendant is that this material had no recognized market value or price. Plaintiff's vice-president, who went to Indianapolis and made the contract for plaintiff, testified that one could not go out into the market and buy other like goods; that such goods could "only be obtained from printer roller manufacturers and large newspaper offices where they make their own rollers." When asked if there were any goods of this character

for sale elsewhere, he said: "None to my knowledge; simply have to grope around and find it." On the question of the loss sustained by plaintiff this witness testified that plaintiff company had a "blanket order" from a company in Kansas City for goods of this character at $80 per ton, at St. Louis; and that plaintiff could ship any quantity of such goods to that company at said price. It appeared that the freight from Indianapolis to St. Louis was $4 per ton.

This testimony regarding the so-called blanket order for the sale of these goods at $80 per ton was admitted over defendant's objections, and exceptions were saved to the rulings in the premises. On cross-examination this witness testified that this blanket order, or "standing offer" as it is also termed, was not in writing, nor had the witness himself made any such arrangement with the Kansas City company. He stated: "One of our men made that arrangement orally."

Defendant's testimony went to show that the reasonable value of the goods at the time in question was from $35 to $40 a ton. And there was testimony for defendant that it had other goods of this character for sale in the city of St. Louis. But defendant's counsel was not permitted to interrogate plaintiff's vice-president as to whether this was known to plaintiff, or whether plaintiff had made inquiry regarding the same.

But one instruction was given for plaintiff. It told the jury that finding certain things, they would find in favor of plaintiff, adding: "And your verdict will be whatever actual loss the plaintiff sustained by reason of the defendant's failure to deliver the said old composition, which was the natural and probable results due to its failure to deliver said goods, and if you find from the evidence that the said old composition was of such a nature that it had no recognized

market value, and that it was impossible for the plaintiff to buy other similar goods, then the measure of the plaintiff's damages is the difference between the price agreed upon in the contract and the reasonable value of the goods, which you may determine, from the evidence of those experienced and familiar with the value of such goods, or by the advanced price at which you may find from the evidence the plaintiff could have sold them.''

It is urged that the giving of this instruction constituted reversible error.

The general rule relative to the measure of damages for the breach of a contract, adopted and adhered to by our courts, is that which was announced in Hadley v. Baxendale, 9 Exch. 341, 26 Wngl. & Eq. 398. [See Mark v. Cooperage Co., 204 Mo. l. c. 265, 103 S. W. 20; Gourley v. Lumber Co., 185 Mo. App. 360, 170 S. W. 339; Tirry v. Hogan, 181 Mo. App. 48, 163 S. W. 873; Sloan v. Paramore, 181 Mo. App. 611, 164 S. W. 662; Martin v. Lumber Co., 167 Mo. App. 381, 151 S. W. 984.] This rule is thus stated in Hadley v. Baxendale, supra:

''Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of in-

jury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case; and of this advantage it would be very unjust to deprive them.''

The damages naturally to be expected to follow from the breach by a vendor of a contract of this character is the difference between the contract price and the market value of the goods at the time and place when and where by the contract they were to be delivered, if the goods have such a market value, hence this is the measure of the vendee's damages in such case, unless there are elements present to authorize a recovery otherwise as for damages in contemplation of the parties at the time of the making of the contract within the second branch of the rule in Hadley v. Baxendale, supra. [See Warren v. Mayer, Mfg. Co., 161 Mo. l. c. 124, 125, 61 S. W. 644; Wilson & Son v. Russler, et al., 91 Mo. App. 275; 35 Cyc. 632 et seq.; 2 Sedgwick on Damages, sec. 734.]

But if the goods are of such a character that they have no market value, then the measure of the vendee's damages is the difference between the contract price and the reasonable value of the goods. [Warren v. Mayer Mfg. Co., supra; 35 Cyc. 646.] Plaintiff's counsel fully recognized this in the case before us, and sought to bring plaintiff's instruction within this doctrine. It told the jury to allow the difference between

the contract price and the reasonable value, if they found that the goods had no market value. However, the instruction permitted the jury to find the reasonable value thereof "from the evidence of those experienced and familiar with the value of such goods, or by the advanced price at which you may find from the evidence the plaintiff could have sold them." The reasonable value of the goods could of course be found from the testimony of those experienced in the value of goods of this character (Warren v. Mfg. Co., supra), but under the circumstances of the case we think it was error to allow the jury to determine the reasonable value of the goods from the price at which plaintiff claims that it could have sold them. In support of this part of the instruction plaintiff relies upon what is said in 35 Cyc. 636, the authority for which statement is McKay v. Riley, 65 Cal. 623; and upon Wilt v. Hammond Bros., 179 Mo. App. 406, 165 S. W. 362; Martin v. Lumber Co., 167 Mo. App. 381, 151 S. W. 984; Hammond v. Beeson, 112 Mo. 190, 20 S. W. 474; Sedgwick on Damages (9 Ed.), secs. 140, 156.

We do not regard the cases of Wilt v. Hammond, Martin v. Lumber Co., and Hammond v. Beeson, supra, as authority for respondent's contention, in the circumstances of the case before us. Nor are respondent's other authorities here persuasive, particularly in view of what was said by our Supreme Court in Warren v. Mayer Mfg. Co., l. c. 125. It was there held that where, in a case such as this, goods have no market value, then the next best evidence is the value shown by the testimony of those experienced in dealing in goods of the character in question and familiar with their value. And it was held that the lower court had properly excluded evidence of the special value of the goods to the plaintiff as claimed by him.

This, we believe, to be controlling here. Plaintiff seeks to determine the reasonable value from evidence

193 App. 7

to the effect that plaintiff could have made a special sale of the goods at $80 per ton. Plaintiff adduced no other evidence of the reasonable value of the goods— though defendant's evidence was that they were reasonably worth only from $35 to $40 per ton. The loss to plaintiff of the profit on a resale of the goods at this special price, if it could have been obtained by plaintiff, cannot be said to have been in the contemplation of the parties. Indeed it does not appear in this record that defendant even knew that plaintiff was buying to resell. (In this connection the opinion in Trigge et al. v. Clay, et al., 88 Va. 330, which was by a divided court, is worthy of consideration, though we say nothing as to the soundness of the conclusion reached.) The case before us is therefore governed, we think, by the first and main branch of the rule in Hadley v. Baxendale, supra. And in view of the facts, the decision in Warren v. Mayer Mfg. Co., supra, appears to be controlling.

We therefore hold that it was reversible error to give this instruction.

And in view of plaintiff's evidence as to the difficulty of obtaining goods of this character, we think that the cross-examination of plaintiff's vice-president touching this matter was unduly restricted. But as the judgment must be reversed for the reason above noted, we need not decide whether the court's ruling in the premises constituted reversible error.

The judgment is reversed and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur. •

## ON MOTION FOR REHEARING.

ALLEN, J.—It is strongly urged by respondent on motion for rehearing that the foregoing opinion is in conflict with that of the Springfield Court of Appeals in Martin v. Lumber Company, 167 Mo. App.

381, 151 S. W. 984, cited in respondent's brief and referred to by us in the foregoing opinion. But we do not think that there is in reality any such conflict. In the Martin case there was a special contract between plaintiff and defendant under which plaintiff constructed upon defendant's property a mill for the manufacture of hubs, at great expense, and the contract required that defendant furnish to plaintiff a certain quantity of timber to be manufactured into hubs. The special contract there breached was quite unlike the one here involved; and the court held that the damages allowed were such as were to be regarded as being within the contemplation of the parties at the time of the making of the contract. In the case before us it does not appear that the damages allowed to be recovered by the instruction in question can be said to have been in the contemplation of the parties. Nothing appears as to this beyond the mere fact that the contract of sale was entered into, the goods to be shipped to the purchaser at St. Louis.

With the concurrence of the other judges the motion for a rehearing is overruling.