## STRAHORN-HUTTON-EVANS COMMISSION COMPANY, Appellant, v. THE WESTERN UNION TELEGRAPH COMPANY, Respondent.

### St. Louis Court of Appeals, May 12, 1903.

1. **Telegram, Changed in Transmission Before Delivery: MISTAKE, NO CAUSE OF LOSS: DAMAGES.** A third party owed plaintiff a large sum of money secured by a chattel mortgage on 1,500 head of cattle. The mortgage provided that as the cattle were sold, the proceeds should be applied on the indebtedness, which had been regularly done up to this last shipment which went to New Orleans in violation of the terms of the mortgage, and was there on May 10 sold to a commission firm, and the sale proceeds retained by such party. On May 12, plaintiff learning of the sale, sent the following telegram to the party: "National Stock Yards, Ill., May 12, 1899. John Lutz, Meridian, Miss.: You must not ship any more cattle covered by our mortgage to any but this market. Please instruct New Orleans commission firm to pay net proceeds to us of three cars that are there. Answer. Strahorn-Hutton-Evans Com. Co." As the message was delivered to Lutz at Meridian, the word "no" was substituted for "net," so that the sense of the dispatch was that the New Orleans firm should pay "no proceeds" instead of the "net proceeds" to the plaintiff. Lutz held the money and appropriated it to his own use and excused himself for doing so on the strength of the telegram: *Held*, that the mistake in the telegram had nothing to do with the payment by the commission firm, to Lutz, for he knew from the mortgage and previous course of business, that the money belonged to plaintiff, notwithstanding the erroneous telegram as delivered to him.

2. ———: **CONTRACT OF SENDING MESSAGE: EFFECT OF.** A party to a contract is responsible for all the consequences of a breach which could have been in the contemplation of both parties, when contract was made, and that a telegraph company that receives a message for transmission, agrees to transmit it correctly and is answerable for any damages produced by its delay or mistake, but if the loss is not within the terms of the contract, or expectation of the sender, delay in sending or mistake in transmission, no liability could attach to the telegraph company. *Held*, that the loss sustained by plaintiff was the result of bad faith on the part of Lutz, and not of the mistake in the telegram.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

AFFIRMED.

*Campbell & Thompson* for appellant.

The court erred in refusing to give plaintiff's instruction No. 1. Leonard v. Telegraph Co., 41 N. Y. 554; Croswell on Electricity, sec. 574; Tel. Co. v. Griswold, 37 Ohio St. 302; Tel. Co. v. Lathrop, 131 Ills. 575; Tel. Co. v. Scheffield, 71 Texas 570; Martin v. Tel. Co., 1 Tex. Civ. App. 143; Bierbaus v. Tel. Co., 81 Ind. App. 246; Fleichner v. Tel. Co., 55 Fed. 78; Parkes v. Tel. Co., 13 Cal. 422; Lee v. Tel. Co., 51 Mo. App. 375; Nelson v. Tel. Co., 72 Mo. App. 111; Thompson v. Tel. Co., 64 Wis. 531; Garrett v. Tel. Co., 83 Iowa 257; Bradford v. Railroad, 64 Mo. App. 482; Benjamin v. Railroad, 113 Mo. 274; Reed v. Tel. Co., 135 Mo. 661.

*Dickson, Smith & Dickson* and *D. W. Robert* for respondent.

If a telegraph company is in default but its default is made mischievous to a party only by the operation of some other intervening cause, such as the dishonesty of a third person, the rule *causa proxima non remota spectatur* applies and the company can not be made responsible for the loss occasioned by the act of such third person. Nominal damages, usually fixed at the cost of the message, can alone be recovered. Bank v. Tel. Co., 30 Ohio St. 555; Lowry v. Tel. Co., 60 N. Y. 198; Tel. Co. v. Cornwell, 2 Colo. App. 491; Tel. Co. v. Simpson, 67 Pac. 839; Tel. Co. v. Liddell, 68 Miss. 1; Leonard v. Tel. Co., 41 N. Y. 544; Reynolds v. Tel. Co., 81 Mo. App. 223; Croswell on Electricity, sec. 574.

GOODE, J.—In May, 1899, the plaintiff corporation held a deed of trust, in the nature of a chattel mort-

gage, on fifteen hundred cattle belonging to John T. Lutz, of Meridian, Mississippi. The deed was made by Lutz to William Hunter, trustee, for the benefit of the plaintiff, on the ninth day of January of said year, at which time the cattle were in Texas; but there was a stipulation that they should be shipped forthwith to Meridian, where they were to remain in Lutz's possession and be cared for by him according to certain agreed terms. Three of the six notes secured by the deed of trust matured April 19th, and the other three May 4, 1899, and altogether they represented an indebtedness of $44,311.49, from Lutz to the plaintiff.

The deed provided that Lutz should have no right to dispose of the cattle without the written permission of the holder of the secured notes, and that three days before the maturity of the notes the cattle should be shipped, consigned to the plaintiff at either St. Clair county, Illinois, Chicago or Kansas City, and be sold by the plaintiff on commission in the customary way, the proceeds to be applied to the discharge of the secured indebtedness and a commission of fifty cents a head for making the sale. If any note was not paid when due or a violation by Lutz of any other condition of the deed of trust occurred, the entire indebtedness became payable instantly and the trustee was entitled to take possession of and sell the property.

After the cattle were transferred to Mississippi, Lutz made some sales and accounted to the plaintiff for the proceeds. He shipped several lots to Mobile, sold them there and turned the money over to C. B. Alexander, an agent of the plaintiff's in the South. He also sold one carload in New Orleans and remitted a check for the price to the plaintiff, which gave him a corresponding credit on his indebtedness. After those transactions, which were conducted by Lutz in his own name, and also after all the notes had matured, he was permitted to continue in possession of the cattle. About May 10th he sold and delivered three carloads to the

firm of Christoffer & Inbau, of New Orleans, for $3,000.
That firm knew nothing of the deed of trust or of any
restriction on Lutz's power to deal with the cattle as
owner at the time of the purchase, and were equally ig-
norant when they paid for them, according to Christof-
fer's testimony, who swore they gave checks in payment
on May 10th when the cattle were delivered. Alexan-
der swore that when he called on Christoffer & Inbau
about the matter on May 12th, they said they had not
yet paid for the cattle, but would pay Lutz at once un-
less legally prevented. Alexander thereupon garnished
them in behalf of the plaintiff, but that proceeding
proved fruitless. This part of the evidence is not ma-
terial to the decision of the case, for the declarations of
law asked by the plaintiff assumed that payment had
been made to Lutz by Christoffer & Inbau before the
date of the telegram which is the basis of this action.

Plaintiff learned of the last shipment of cattle by
Lutz and sent him the following telegraphic message
regarding it; or rather delivered the message to the de-
fendant to be sent:

"National Stock Yards, Ill., May 12, 1899.
"John Lutz, Meridian, Miss.:

"You must not ship any more cattle covered by our
mortgage to any but this market. Please instruct New
Orleans commission firm to pay *net* proceeds to us of
three cars that are there. Answer.

"STRAHORN-HUTTON-EVANS COM. CO."

As the message was delivered to Lutz at Meridian,
the word "no" was substituted for "net" so that the
sense of the dispatch was that the New Orleans firm
should pay "no proceeds" of the cattle, instead of the
"net proceeds," to the plaintiff.

Whether Lutz collected the price of the cattle be-
fore or after receiving the telegram, he appropriated
the money to his own use and excused himself for doing
so on the strength of the message as it reached him.
He was insolvent, afterwards became a bankrupt and

the plaintiff lost the price of the cattle and much more money besides in litigation over the affair. As a consequence this action was instituted to recover the plaintiff's loss from the telegraph company, on the grouna that the loss was due to the erroneous transmission of the message.

The foregoing are all the facts we need recite to make this case intelligible as it is presented for our decision.

Two conclusions of fact are deducible from the evidence: One is that the proceeds of the cattle sold to Christoffer & Inbau had been paid to Lutz before plaintiff sent the telegram in question, as Christoffer positively swore, the other that the money was paid afterwards and after said firm had notice of plaintiff's lien, as Alexander's testimony tended to prove. As stated, the declarations of law requested by the plaintiff, and for the refusal of which error is assigned, assumed that the first conclusion was the true one—that the proceeds were paid before the message was sent. Those declarations were to the effect that if the money for the cattle was paid to Lutz before plaintiff sent its telegram, but Lutz still had the money in his possession when the telegram was received and, in reliance on the telegram, failed to pay it over to plaintiff, there must be a judgment for plaintiff. Now it is apparent that in the circumstances predicated, the mistake in the telegram had nothing to do with the payment by Christoffer & Inbau to Lutz, and that fact is eliminated from the case for the purposes of this review.

The question that remains is: Did the telegram, as Lutz received it, justify him in appropriating the money to his own use instead of transmitting it to the plaintiff? It plainly did not. Lutz had made previous sales of cattle and had turned the proceeds over to the plaintiff, and its course of business with him recognized his right to sell and account for the proceeds. Moreover, the obligation of the deed of trust entitled the plain-

tiff to the cattle or the money realized by selling them. As Lutz got the message it was simply a notification to Christoffer & Inbau to pay no proceeds of the stock they had bought to the plaintiff and was authority to pay to Lutz, even if they had notice of plaintiff's lien. What is there in that message which expressly or impliedly gave Lutz the right to appropriate the proceeds? It did not refer to what he should do with the money, but only to what Christoffer & Inbau should do with it. Lutz knew it belonged to the plaintiff and he ought to have remitted it at once instead of keeping it. There was nothing in the message to intimate that plaintiff designed to let him dispose of it contrary to the provisions of the deed of trust, for his personal convenience. The conspicuous facts of the case are that plaintiff had permitted Lutz to retain the cattle after it was entitled to take them and foreclose its lien, had permitted him to make sales and account for the proceeds and finally he abused plaintiff's confidence and committed a breach of trust. But no justification for this act can be found in the telegram he received.

We accept plaintiff's contention that a party to a contract is responsible for all the consequences of a breach which could have been in the contemplation of both parties when the contract was made, and that a telegraph company which receives a message for transmission agrees to transmit it accurately and is answerable for any damage produced by its delay or mistake, if the loss was one which was either expressly contracted against or was within the expectation of the sender and the telegraph company as likely to result if delay or mistake occurred. Hadley v. Baxendale, 9 Exch. 341; Abeles v. Telegraph Co., 37 Mo. App. 554; Nelson v. Telegraph Co., 72 Mo. App. 111. We also favor the doctrine that a telegram, which on its face relates to a business transaction, apprises the telegraph company of the importance of conveying it accurately and that damage is likely to ensue from a failure to do so. Lee v.

Telegraph Co., 51 Mo. App. 375; Bierbaus v. Telegraph
Co., 8 Ind. App. 246; Parks v. Telegraph Co., 13 Calif.
422. But conceding those propositions of law, we are
confronted by this one which, on the facts before us, is
controlling: No person can be mulcted in more than
nominal damages for a breach of contract, unless the
breach caused substantial damage. Metzner v. Gra-
ham, 66 Mo. 653; Weber v. Squier, 51 Mo. App. 601;
Nelson v. Telegraph Co., supra. It is clear to demon-
stration that the misappropriation by Lutz of the fund
received from Christoffer & Inbau, was in no proper
sense caused by the mistake in the message, but was an
independent misfeasance, due either to a fraudulent mo-
tive or to a careless interpretation of what the message
meant. He swore indeed, that he would have remitted
the fund to the plaintiff but for the mistake, and on this
assertion plaintiff contends the mistake was the proxi-
mate cause of its loss. But defendant is only respon-
sible for loss induced by Lutz's acting on the telegram
according to its meaning as he got it; and if he drew
the inference that it entitled him to use the money for
other purposes than paying the notes he owed plaintiff,
the inference was unwarranted and the cause of the loss
in that event was Lutz's unreasonable interpretation
of the erroneous message and not defendant's mistake in
the transmission. He testified that he understood the
telegram that way, which is well-nigh incredible; for it
opened with a protest against his shipping cattle to any
market except the National Stock Yards, Illinois, thus
showing plaintiff's desire to get the proceeds of all
sales.

The judgment of the court below was that the plain-
tiff should recover the price paid to have the message
sent, which was correct. It is therefore affirmed. *Bland,*
*P. J.,* and *Reyburn, J.,* concur.