## H. E. TIRRY et al., Respondents, v. JOHN J. HOGAN et al., Appellants.

St. Louis Court of Appeals.   Argued and Submitted January 6, 1914.   Opinion Filed February 3, 1914.

1. **DAMAGES: Contracts: Breach.** In an action for the breach of a contract, the damages recoverable are such as may fairly and reasonably be considered, either as arising naturally—i. e., according to the usual course of things—from such breach, or such as may be reasonably supposed to have been within the contemplation of both parties, when they made the contract, as the probable result of the breach.

2. ———: ———: ———. The measure of damages for the breach of a contract to furnish a stipulated number of feet of logs to be sawed up into lumber, is the difference between the cost of sawing the quantity not furnished and the price agreed to be paid therefor.

3. ———: ———: ———: **Recovery for Extra Services.** Where defendants contracted to furnish plaintiffs with a stipulated number of feet of logs to be sawed up into lumber, for a stipulated price, and, after the cutting began, defendants induced plaintiffs to make trips back and forth to their home in another place, because of defendants' delay in furnishing logs, and defendants never did furnish the stipulated quantity, *held* that plaintiffs were entitled to recover their expenses during the time the mill was out of logs and in going to and returning from their homes, not as damages flowing from the breach of the original contract, but for extra services performed by them outside of the contract at defendants' request.

4. ———: ———: ———: ———: **Instructions.** In an action for the breach of a contract to furnish plaintiff with a stipulated quantity of logs to be sawed up into lumber for a stipulated price, where it was shown that, after the cutting began, defendants induced plaintiffs to make trips back and forth from their home in another place, because of defendants' delay in

furnishing the logs, an instruction that, in estimating plaintiffs' damages, the jury might allow the reasonable value of railroad fares and traveling expenses for plaintiffs and their men between their homes and the place where the logs were to be cut, due to defendants' failure to furnish sufficient logs to keep the mill in steady operation, "as you may, from the evidence, find that plaintiffs had good reason to believe that such expenses and loss of time were reasonably necessary to the proper performance of plaintiffs' part of the contract," was erroneous, in that it left the question of the value of such trips and the necessity therefor to plaintiffs' judgment.

5. APPELLATE PRACTICE: Damages: Erroneous Instruction: Harmless Error. In view of Sec. 2082, R. S. 1909, an erroneous instruction on the measure of damages should not work a reversal of the judgment, where, under the undisputed evidence, the amount awarded plaintiff is less than the award should have been.

6. PLEADING: Variance: Action on Joint, Recovery on Several, Contract. Under Secs. 2769 and 2772, R. S. 1909, where two persons are sued as partners, it is proper to render a judgment against one of the defendants, who is shown to be liable, although proof of the partnership fails and the other defendant is discharged.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

AFFIRMED.

*H. B. Irwin* and *Sam Byrns,* attorneys for appellant.

(1) The court erred in admitting illegal and improper evidence. See Hyatt v. Railroad, 19 Mo. App. 300; Com. Co. v. Railroad, 113 Mo. App. 549; Pruitt v. Railroad, 62 Mo. 527; Hobbs v. Railroad, 10 Law Rep. (2B) 111; Hughs v. Tel. Co., 79 Mo. App. 137. (2) The court erred in giving instruction No. IV at the request of plaintiffs. See Hyatt v. Railroad, 19 Mo. App. 300; Com. Co. v. Railroad, 113 Mo. App. 549; Pruitt v. Railroad, 62 Mo. 527; Hobbs v. Railroad, 10 Law Rep. (2B) 111; Hughs v. Tel. Co., 79 Mo. App.

137; Wilburn v. Railroad, 36 Mo. App. 215; Morrison v. Yancy, 23 Mo. App. 675; Camp v. Railroad, 94 Mo. App. 284; Rhodes v. Land & Lumber Co., 105 Mo. App. 314; Badley v. St. Louis, 149 Mo. 134. (3) The court erred in overruling defendant's motion for a new trial. See Hyatt v. Railroad, 19 Mo. App. 300; Com. Co. v. Railroad, 113 Mo. App. 549; Pruitt v. Railroad, 62 Mo. 527; Hobbs v. Railroad, 10 Law Rep. (2B) 111; Hughs v. Tel. Co., 79 Mo. App. 137; Wilburn v. Railroad, 36 Mo. App. 215; Morrison v. Yancey, 23 Mo. App. 675; Camp v. Railroad, 94 Mo. App. 284; Rhodes v. Sand & L. Co., 105 Mo. App. 314; Badley v. St. Louis, 149 Mo. 134. (4) The court erred in overruling defendant's motion in arrest of judgment. The defendants were sued as partners, and the verdict for M. E. Hogan is a bar to a judgment against John J. Hogan. In finding for M. E. Hogan, the jury found there was no contract and no partnership, and such a finding is a bar to a judgment against John J. Hogan.

*P. S. Terry* and *R. A. Frazier* for respondent.

(1) The court did not err in admitting of the testimony of plaintiffs to the effect that they had moved their engine, saw mill and machinery from Brownstown, Ill., to Barnhart, Missouri and that it cost them $140.48. Such testimony was admissible, not as an element of damages, but for the purpose of showing that plaintiffs had attempted to perform their contract and the amount of money expended by plaintiffs in doing this. Brennan v. City of St. Louis, 92 Mo. 488; Fullerton v. Fordyce, 144 Mo. 533. (2) The court did not err in the admission of testimony of witnesses Strayer and Swaller to the effect that they were employed by plaintiffs on March 17, 1911 and that they run out of logs and in consequence, waited one day and that their services were worth $1.50 each

at the time when defendant, John J. Hogan had told plaintiffs to wait, he would be out and get the logs for them, nor did the court err in the admission of the testimony of John Scoles, Tirry and Leadbetter to the effect that said defendant called them by phone in April, 1911 from their homes in Illinois and told them to come down and bring a man with them and when they got here, there were no logs and plaintiffs and Scoles were compelled to go back because of defendant's failure to furnish logs, that the reasonable value of the time and services of the said Scoles, Tirry and Leadbetter were $1.50 and $2 each and that their railroad fare was $5 each, nor did it err in the admission of the testimony regarding another trip of plaintiff's and a man by the name of Sidwell, at defendant's request in June of the same year in which it showed plaintiffs came and that defendant was not ready for plaintiffs to saw and that by reason of his having caused them to come and bring this man, it had cost them about $20. All of this testimony was admitted as a proper element of damages upon the theory that, though defendant had already broken his contract, it was the duty of plaintiffs to make the damages and injuries to him as light as possible, and in doing this the party already injured, is entitled to all necessary expenses incurred by them in attempting to comply with the contract. Shelby v. Railroad, 77 Mo. App. 212; Fullerton v. Fordyce, 144 Mo. 533; Ellis v. Hilton, 78 Mich. 150; 13 (Cyc) Cyclopedia of Law and Procedure 61 and Note 2; 13 (Cyc) Cyclopedia of Law and Procedure 72; 13 (Cyc) Cyclopedia of Law and Procedure 78 and cases there cited; Athletic B. B. Assn. v. St. L. S. P. Assn, 67 Mo. App. 656. (3) The court did not err in instruction No. 4 given at request of plaintiffs, for plaintiff was entitled to the measure of damages proved by the evidence mentioned in point 2 of this brief because said damages and expenses were incurred in reducing the damages for a contract al-

ready broken, but for which they had good reason to believe could be mended with little cost, and for the loss of profits (the other element of damages) for the final breaking of the contract after plaintiffs knew it was no use for them to try any longer to perform the contract. Shelby v. Railroad, 77 Mo. App. 212; Fullerton v. Fordyce, 144 Mo. 533; Ellis v. Hilton, 78 Mich. 150; 13 (Cyc) Cyclopedia of Law and Procedure, 61 and Note 2; 13 (Cyc) Cyclopedia of Law and Procedure, 72; 13 (Cyc) Cyclopedia of Law and Procedure, 78; Athletic B. B. Assn. v. St. L. S. P. Assn, 67 Mo. App. 656; Wolff Shirt Co. v. Fraenthal, 96 Mo. App. 314; 13 (Cyc) Cyclopedia of Law and Procedure, 47; 13 (Cyc) Cyclopedia of Law and Procedure, 50. For loss of profits see also the following cited by appellant. Hyatt v. Railroad, 19 Mo. App. 300; Com. Co. v. Railroad, 113 Mo. App. 549; Badgly v. Railroad, 149 Mo. 134. (4) The court did not err in overruling defendants' motion in arrest of judgment. Defendants being sued as partners, and the evidence proving to the satisfaction of the jury that defendant John J. Hogan alone was liable, a verdict and judgment in favor of plaintiffs against John J. Hogan, one of the partners and in favor of the other partner, M. E. Hogan is entirely proper, Sec. 1981, R. S. 1909. Sec. 2769, R. S. Mo. 1909. Sec. 2772, R. S. Mo. 1909. Partnership contracts are within the above section. Laumeier v. Dolph et al., 171 Mo. App. 82; Same case, 145 Mo. App. 78; Hutchinson v. Safety Gate Co., 247 Mo. 109; Stove Co. v. Grubbs, 135 Mo. App. 466.

STATEMENT.—Action by plaintiffs against M. E. and John J. Hogan for damages claimed to have accrued to plaintiffs by reason of a breach of contract entered into between plaintiffs and defendants, as it is alleged.

The petition avers that on October 24, 1910, defendants entered into a verbal contract with plaintiffs

Tirry v. Hogan.

under and by which it was agreed that if plaintiffs would furnish a certain sawmill, engine and machinery, and necessary men to operate the same, putting up and operating the mill at defendants' premises in Jefferson county, Missouri, within a reasonable time, that defendants would furnish plaintiffs sufficient timber and logs at the mill to make 240,000 feet of lumber, of dimensions specified, and would pay plaintiffs the sum of five dollars per thousand feet, or a total of $1200 therefor; that in addition to furnishing the logs to make these 240,000 feet of described lumber, defendants contracted to furnish plaintiffs' mill certain other quantities of timber to make into ties, agreeing to pay plaintiffs the sum of eight cents for each tie so made; that in addition to furnishing the timber for the purpose of making the lumber and ties above mentioned, defendants would furnish plaintiffs at the mill, all timber necessary for fuel and necessary water to run the engine, defendants further contracting to at all times keep sufficient logs and timber at the mill to enable plaintiffs to·be continually occupied in sawing the 240,000 feet of lumber, as also ties as above, and at no time to permit plaintiffs to run out of wood or water for their engine, or of logs for sawing the lumber and ties, at all times furnishing plaintiffs at their mill with steady sawing until plaintiffs had sawed the amount of 240,000 feet of dimension lumber specified; that relying on the promises and agreements of defendants, plaintiffs accepted the same in good faith and at great expense to themselves and within a reasonable time moved their sawmill, machinery, etc., and laborers a great distance, namely, from Brownstown, Illinois, to defendants' premises in Jefferson county, Missouri, and on December 6, 1910, had the same at the place there designated by defendants and installed ready for sawing; that defendants began to furnish and did furnish logs and timber to a sufficient amount to enable plaintiffs to cut 61,000 feet, and also

furnished certain other timber which defendants sawed into ties; that on or about March 17, 1911, in violation of the agreements and the contract above mentioned, defendants wrongfully failed to perform their part thereof by failing to furnish sufficient timber to keep the mill and machinery running and plaintiffs and their men at work, and negligently continued to fail to furnish the same until about June 18, 1911, when defendants again furnished a small amount of timber to plaintiffs at their mill; that defendants furnished some tie timber until about July 4, 1911; that plaintiffs sawed the timber furnished into ties, but that on July 4, 1911, and ever since that date, defendants, in violation of their contract and agreement, had negligently failed and refused to furnish plaintiffs at their mill, any timber for fuel, any further timber to be sawed into dimension lumber, any logs or timber to be sawed into ties, or any water for their mill, though often requested by plaintiffs so to do. Plaintiffs further aver that the reasonable value of the services of the sawmill, machinery, laborers, etc., is about $50 per day.

They further aver "that by reason of defendants having failed to furnish timber or logs to plaintiffs' mill from the 17th day of March, 1911, to the 18th day of June, 1911, and by reason of defendants having failed to furnish sufficient timber logs for lumber and sufficient timber for fuel and sufficient water to run plaintiff's engine, as above mentioned and fully described in this petition, from the 4th day of July, 1911, to this date, plaintiffs have lost large amounts of valuable service and been forced to be without large amounts of valuable time of their said men, laborers, artisans, sawmill, engines and machinery; been forced to expend great amounts of money for railroad fare, hotel bills and traveling expenses in going to and from their homes from said defendants' place of business aforesaid in the sum of $1095; that by reason of de-

fendants having failed and refused to furnish to plain-
tiffs at their mill suitable timber and logs for plain-
tiffs to saw the balance of the 240,000 feet, which is
160,000 feet of 1by wide and 2by wide lumber, as afore-
said, plaintiffs have been damaged in the sum of
$905.'' Judgment is prayed for $2000 and costs.

Defendants answered separately by general de-
nials as also by special denials of partnership, the an-
swers being duly verified.

There was testimony in the case tending to prove
that plaintiffs lived at St. Elmo, Illinois; that defend-
ant M. E. Hogan was a banker, living in St. Louis, but
conducting a bank at Altamont, Illinois; that plain-
tiff Tirry, along in October, 1910, was in Hogan's
bank at Altamont, when Hogan asked him if he had a
sawmill and if he could move this sawmill from its
location in Illinois to Missouri to the premises of John
J. Hogan, a son of M. E. Hogan, situated near Kimms-
wick, Jefferson county, Missouri, and there set it up
and saw timber for Hogan and his son. Tirry ex-
pressed willingness to take the job if his son-in-law,
Leadbetter, was willing. Hogan told him that he would
write to his son and let the latter know when to meet
them; that his son John was running the business in
Missouri for him and whatever bargain he made would
be all right. On receipt of a letter signed by John J.
Hogan, dated St. Louis, Sept. 7, 1910, and on the
letterhead of M. E. Hogan & Sons, plaintiffs met John
J. Hogan at the timber tract. This letter was to the
effect that the writer, John J. Hogan, understood from
his father that Tirry had a sawmill and would like
work for it that fall; that he, John J. Hogan, needed
a mill for sawing car-stack crossing plank and ties and
thought he could give Tirry enough work to keep his
mill working steady for some time to come, and asked
Tirry to write and let him know what the prospects
were for his coming over and if he thought he could
bring teams and men to do the sawing, logging and

hauling. Telling where the mill was to be located, the letter stated that the writer was paying fourteen cents a tie for hauling to a station, about seven miles. As a result of the correspondence, plaintiffs met John J. Hogan at the timber tract, and while Hogan was showing them the timber Leadbetter remarked that it was a poor inducement to bring a mill so far. Whereupon Hogan said that did not make any difference; that he would agree to furnish them timber to cut at least 240,000 feet of lumber of the dimensions specified (that is "1 by wide and 2 by wide," meaning by that 1 inch thick and as wide as the timber would make and 2 inches thick and as wide as the timber would make), for which he would pay $5 per thousand, further agreeing that all the timber that could not be made into lumber of the dimensions specified should be made into railroad ties, for which latter he would pay eight cents per tie. Hogan also told plaintiffs that there was plenty of water there to run the engine and that the slabs could be used for fuel. Plaintiffs did not accept the proposition of John J. Hogan to do their own hauling, that being left to Hogan. This agreement having been arrived at between plaintiffs and John J. Hogan, plaintiffs went back to Illinois, agreeing that as soon as they could finish a contract on which they were there then working that they would move the mill over to the Hogan tract and go to work. After this conversation and arrangement with John J. Hogan, defendants went back to Altamont and told M. E. Hogan of the arrangement with his son John. The mill was then at Brownstown, Illinois, and plaintiffs began to get ready to move it to Missouri, which they did, moving the mill over at a cost of about $140. It was set up and ready to run on December 11, 1910, when plaintiffs commenced sawing the logs. Plaintiffs furnished two hands beside working themselves in running the mill and sawed until Christmas of that year, using up all the logs then on hand. They then

went home to Illinois and came back on January 2nd.
There were no logs there then and plaintiffs again went
home, staying until the latter part of January. Re-
turning to the mill they found only three logs there to
saw. This was in February. They sawed these and
moved the mill to another part of the tract and there
sawed 12,000 feet of lumber. Logs were furnished them
until about March 17, when they again ran out of logs,
having sawed a total of 60,000 feet of lumber and some
ties. When they ran out of logs they called up John
J. Hogan and notified him of that fact and he agreed
to come down and meet them. He did not come and
they again called him and he told plaintiffs to go
home and stay that Sunday and if they did not hear
from him to come back. They did so and found no
logs, and so informed Hogan. Hogan had told them
he would notify them when to come back, and did no-
tify them, telling them to come back and bring some
men with them. That was in April. There were no log
there when they came back, bringing a man with them.
It cost them $8.49 for expenses of the road and bringing
him with them. This was repeated in June, making
two trips at the request of Hogan. He told them he had
no more logs. During all this time plaintiffs had two
laborers waiting to go to work. Asked if they were
paying them for every day, objection was made by
counsel for defendants, on the ground that this was
not a proper element of damage. The court overruled
the objection, saying that the question seemed to him
to be what profit would have been made if Hogan had
furnished the timber under the contract; that he
thought the question was how much plaintiffs could
have made there, sawing the amount of lumber, but
that he would hear the testimony so as to get at the
facts in the matter. Defendants duly saved exception
to the overruling of the objection, and the witness tes-
tified that they were paying these two men $1.50 a
day each. Subject to the same objection and under

the same ruling, the court permitted witness to testify as to the value of the services of himself and his son-in-law in running the mill. There was also testimony that the expense of going back and forth on the two different occasions between the mill and his home in Illinois was $15 the round trip. There was further testimony to the effect that the cost of cutting the timber was about $2.50 per thousand feet. Both plaintiffs testified practically to the effect as above stated. They also produced other witnesses, whose testimony tended to corroborate that given by plaintiffs as to non-supply of logs, etc.

Defendants' testimony was to the effect that plaintiffs had met John J. Hogan and gone over the matter of the proposed work and had agreed to take the job on the terms above mentioned, and further agreed that they would come the next week—that is, the week following October, 1910—defendant John J. Hogan, however, undertaking to do the hauling himself; that everything was ready for plaintiffs to go to work on the Monday following, that is, in October, but they did not come with the mill until December 5th, and did not get it started until the tenth, went home Christmas and stayed a week, came back during the first week in January, then worked two weeks and went home again; then came back and went to work, the mill having been in the meantime moved to another place. There was also testimony tending to show that when the mill had been moved from the first place, it had been moved to a place where John J. Hogan objected, and to a place where he could not get logs to the mill; and also testimony tending to show that they had kept the mill supplied with water and timber. There was also testimony given on behalf of defendants to the effect that M. E. Hogan and John J. Hogan were not partners in this enterprise and that M. E. Hogan had no interest whatever in his son's business.

There was no denial of the terms of the contract nor of the number of feet of lumber cut.

At the instance of plaintiffs the court gave several instructions, none of which are now complained of except the fourth, which was as to the measure of damage, the court telling the jury that if they found for plaintiffs, in estimating their damages they might allow such reasonable value as is shown by the evidence for the services of plaintiffs' men and machinery and plaintiffs' own time, together with such amounts as were reasonbly and necessarily expended by plaintiffs for railroad fares and traveling expenses while said men and machinery and plaintiffs were necessarily idle, and while plaintiffs were necessarily traveling to and from their homes to defendants' place at all times, *as you may, from the evidence, find that plaintiffs had good reason to believe that such expenses and loss of time were reasonably necessary to the proper performance of plaintiffs' part of the aforesaid contract,* and which defendants by their having failed to furnish sufficient logs or water, had occasioned (if you do, in fact, find that the defendants did so fail) together with the amount of clear net profit, which you may, from the evidence, find that plaintiffs would reasonably have made had defendants furnished (in addition to the logs or ties) sufficient logs and water to make the balance of the full amount of the 240,000 feet of 1by wide and 2by wide lumber; provided, however, that before you can allow plaintiffs any clear net profits as above mentioned, you must, in fact, find that the defendants did agree to furnish sufficient logs to make said 240,000 feet of 1by wide and 2by wide lumber and necessary water for engine, and did fail to furnish said logs or water or some part thereof.''

The court gave all the instructions asked by defendants, six in number, one of them to the effect that if the jury believed that in October, 1910, John J.

Hogan agreed with the plaintiffs to hire them to furnish a sawmill and cut timber on a tract of land in Jefferson county, Missouri, into lumber and ties, and agreed to pay plaintiffs therefor for such lumber as they might saw from said tract the sum of $5 per thousand feet for the lumber so cut and eight cents per tie," and that said Hogan did not agree or guarantee to furnish plaintiffs 240,000 feet of lumber to be so sawed, and to furnish water for their mill, then you will find the issues for the defendants."

Another instruction was to the effect that if they found from the evidence that it is part of the agreement between plaintiffs to set their mill at such point on the tract of land where said timber was situated as would be convenient for defendant John J. Hogan to deliver his logs thereat and that when requested by that defendant, plaintiffs had failed and refused to set their mill at the point on the tract convenient to defendant, plaintiffs could not recover.

Another was as to the burden of proof being upon plaintiffs.

Another was to the effect that if the jury found from the evidence that defendant M. E. Hogan was not in partnership with John J. Hogan and did not enter into a contract with plaintiffs for cutting the timber, their verdict should be for defendant M. E. Hogan, and instructed the jury as to what was necessary to prove partnership. The final instruction was to the credibility of witnesses.

The jury returned a verdict in favor of plaintiffs and against John J. Hogan, assessing damages at the sum of $300, and found in favor of defendant M. E. Hogan. Judgment following and defendant John J. Hogan, interposing a motion for new trial as well as one in arrest and excepting to these motions being overruled, has duly perfected his appeal to this court.

Complaint is made of the admission of certain evidence and of the giving of the fourth instruction,

the part objected to in that being italicized, and also to allowing recovery against John J. Hogan when by the verdict of the jury it was found that there was no partnership between the defendants M. E. and John J. Hogan.

REYNOLDS, P. J. (after stating the facts).—In Hadley v. Baxendale, 9 Exch. 341, 26 Eng. L. & Eq. 398, l. c. 402, it was announced as the rule to be adopted in assessing damages for the breach of a contract that ''where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be, either such as may, fairly and reasonably, be considered either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.'' That rule has often been followed and applied in this country. [See Sedgwick on Damages (9 Ed.), secs. 144-148.] Our courts have always recognized it, as see Strahorn-Hutton-Evans Com. Co. v. Western Union Tel. Co., 101 Mo. App. 500, 74 S. W. 876. We think the learned trial court recognized it as the correct rule as to the measure of damage flowing out of the breach of the original contract between the parties here. During the progress of the trial the court admitted, over the objection of defendants, testimony as to the cost of removing the sawmill from Illinois to Missouri, but it will be noticed that this item is not included in the instructions as an element of damage. In point of fact when the evidence as to that item was offered, while overruling the objection to its admission and allowing it to be given in evidence, the court announced that it did so subject to further ruling.

The evidence is without contradiction that the contract between the parties was that respondents were to be furnished with sufficient logs to cut at least 240,000 feet of lumber of specified dimensions and for this they were to receive $5 a thousand feet. This contract was breached by failure to deliver that quantity of logs. The evidence is that the cost of sawing was $2.50 per thousand. Plaintiffs were furnished with sufficient lumber to cut 61,000 feet, and no more. So they lost the profit which would have accrued to them if furnished with enough logs to cut the remaining 179,000 feet. That profit would have amounted to $447.50. Clearly that difference between the agreed amount and the amount realized measured the damages arising naturally and according to the usual course of things from the breach of the contract.

The fourth instruction given by the court at the instance of plaintiffs, however, while including this loss as an element of damage, went further. It authorized the jury to return a verdict covering the expense of plaintiffs during the time the mill was out of logs, and the expense of going back to their homes and returning, and evidence was admitted covering these items. Ordinarily plaintiffs could not recover for these expenses. [Hadley v. Baxendale, supra; Brown et al. v. Cowles, 72 Neb. 869, 101 N. W. 1020.] But the evidence tends to show that the trips back and forward were made by the express direction of the defendant John J. Hogan. True, this was after entering into the original contract, and undoubtedly not contemplated at the time that contract was made, but we think under the facts in evidence in this case that it was not error to include these items in the damage to which plaintiffs were entitled, not for breach of the original contract, but for extra services performed by them outside of the contract and at the instance and request of defendant John J. Hogan; that is, they are to be distinguished from the damages arising from

the breach of the original contract and as arising from
agreements made outside of that between the parties.
So they are pleaded.

In giving this fourth instruction, the court said,
in effect that in estimating the damages plaintiffs could
be allowed to recover the reasonable value for railroad
fares and traveling expenses for themselves and their
men while traveling to and from their homes to de-
fendants' place at all times, *"as you may, from the*
*evidence, find that plaintiffs had good reason to be-*
*lieve that such expenses and loss of time were reason-*
*ably necessary to the proper performance of plaintiffs'*
*part of the aforesaid contract,* and which defendants,
by their having failed to furnish sufficient logs or wa-
ter, had occasioned (if you do, in fact, find that the
defendants did so fail)." This part of the instruc-
tion italicized is error, as it apparently leaves the
question of the value of these trips and of the reason-
able necessity for them to the judgment of plaintiffs.
Notwithstanding this language, and for that matter,
notwithstanding the court instructed the jury that they
might return damages for extra men employed and
for traveling expenses, no injury resulted to appel-
lant therefrom, for the amount of damages which the
jury awarded is much less than the actual loss to
plaintiffs arising directly out of the breach of the con-
tract. That was, according to the undisputed evidence
in the case, $447, whereas the verdict and judgment
against defendant John J. Hogan is for but $300. We
have concluded that giving effect to section 2082, Re-
vised Statutes 1909, which provides that judgments of
any court shall not be reversed by the appellate court,
"unless it shall believe that error was committed by
such court against the appellant or plaintiff in error,
and materially affecting the merits of the action," that
this judgment before us should not be reversed for
this error in this instruction.

It is argued by learned counsel for appellant John J. Hogan, that the action having been brought against John J. Hogan and M. E. Hogan, as partners, and proof of partnership having failed, recovery could not be had against one of the partners alone, the other partner having been discharged by the verdict of the jury. That point has been settled adversely to the contention of the learned counsel for appellant by the decision of our Supreme Court in Bagnell Timber Co. v. Missouri, K. & T. Ry. Co., 242 Mo. 11, 1. c. 20, 145 S. W. 469, and in Hutchinson v. Richmond Safety Gate Company et al., 247 Mo. 71, 1. c. 109, 152 S. W. 52, construing sections 2769 and 2772, Revised Statutes 1909. So our own court has held in several cases, as see Woods-Evertz Stove Co. v. Grubbs & Co., 135 Mo. App. 466, 116 S. W. 5; Laumeier v. Dolph, 145 Mo. App. 78, 130 S. W. 360, s. c. 171 Mo. App. 81, 153 S. W. 510.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.

