Osborn v. Emery.

---

MICHAEL OSBORN, Respondent, v. JOHN S. EMERY *et al.*, Appellants.

Kansas City Court of Appeals, December 5, 1892.

1. **Frauds and Perjuries:** COLLATERAL AND ORIGINAL UNDERTAKINGS: DEMURRER TO EVIDENCE. If the undertaking is one where defendant agrees to pay if some one else does not, and is not in writing, it cannot be enforced; but if the defendant made an original promise whereby plaintiff was to look to him alone for payment, then he should be held, and in this case the evidence is not so overwhelmingly on one side as to justify the appellate court's interference.

2. **Evidence:** AFFIDAVIT FOR CONTINUANCE: CROSS-EXAMINATION OF AFFIANT. Where the statement of facts set out in an application for a continuance has been read to the jury as the testimony of the absent witness, it is error to permit the cross-examination of the affiant in said application as to the matters therein contained relating to the diligence used to procure the attendance of such witness.

3. **Evidence:** OTHER DEFAULTS IN PAYMENT. Where the defense to an action for debt is that the debt is the debt of a corporation of which defendant was an officer, it is error to show other delinquencies on the part of the corporation.

*Appeal from the DeKalb Circuit Court.*—HON. CHAS. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*K. B. Randolph* and *S. S. Brown,* for appellants.

(1) The demurrer to the evidence offered at the close of plaintiff's testimony should have been sustained. There is no evidence in the record of a contract to do the work, between plaintiff and defendants. The strongest construction that can be placed on plaintiff's unsupported testimony is that defendants simply agreed, orally, to see him paid, and this comes within the statute of frauds. Revised Statutes, 1889, sec. 5186; *Bissig v. Britton,* 59 Mo. 204; *Rottman v. Fix,* 25 Mo. App. 571; *Glenn v. Lehnen,* 54 Mo. 45; *Rottman v. Pohlman,* 28 Mo. App. 399. (2) It was error in the court to permit the plaintiff to read to the jury that part of the application for a continuance, which dealt with the reasons why the testimony of H. D. Perky had not been procured and the efforts made to procure it. Revised Statutes, 1889, secs. 2126, 2127. (3) The court clearly committed error in permitting plaintiff's attorney to cross-examine the witnesses concerning the attempts of the guards, deputy sheriffs, etc., to collect their pay after the failure of the exposition, and concerning the bicycle riders and musicians, and concerning Capt. Jack Crawford and his Indians and Mexicans, etc. (4) The verdict is not supported by the evidence, and should be reversed. *Lionberger v. Pohlman,* 16 Mo. App. 392; *Zwisler v. Storts,* 30 Mo. App. 163; *Fischer v. Trans. Co.,* 13 Mo. App. 133. The verdict is against the entire weight and current of the testimony, and should be reversed. *Taylor v. Fox,* 16 Mo. App. 216.

*Kelley & Kelley,* also, for appellants.

The testimony was not relevant or competent, but was simply intended to prejudice the jury. It could

have no other object or effect. And the case should be reversed, and a new trial awarded for these reasons alone. *Ritter v. Bank*, 87 Mo. 574; *Haynes v. Christian*, 30 Mo. App. 198; *Mathias v. O'Neil*, 94 Mo. 520; *State v. Blunt*, 91 Mo. 503; *State v. Roberts*, 62 Mo. 388; *Frederick v. Allgaier*, 88 Mo. 598.

*Huston & Parrish*, for respondent.

(1) The court properly submitted the case to the jury. It is charged in the petition, and the proof shows that the amphitheater was erected for and on account of the appellants. The contract made for its erection was a direct and independent contract of their own. In accepting respondent's proposition to erect it they dealt for themselves, and agreed to pay the price asked for the work to be performed. *Glenn v. Lehnen*, 54 Mo. 45, 52, 53; *Yeoman v. Mueller*, 33 Mo. App. 343; *Crawford v. Edison*, 13 N. E. Rep. 80; *Emmerson v. Slatter*, 22 How. 35. (2) The court did not err in permitting counsel to read the whole of the appellants' affidavit for a continuance. Unread portions of the affidavit were contradictory of the evidence of the appellants, and was admissible as declarations of the parties to the suit (*Jamison v. Baggot*, 106 Mo. 240; *Bogie v. Nolan*, 96 Mo. 85, 90; *State v. Young*, 78 Mo. 307; *Gould v. Trobridge*, 32 Mo. 291); and this is true even in criminal cases. *State v. Buchler*, 103 Mo. 203, and cases cited; *State v. Hayes*, 307-18. Pleadings are admissible against the party pleading in a subsequent suit, even between him and a stranger, as solemn admissions of the truth of the facts stated. *Sheppard & Co. v. Jones*, 32 Mo. App. 657-64; *Murphy v. Type Foundry*, 29 Mo. App. 541-43; *Schad v. Sharp*, 95 Mo. 573-76. Declarations by one tending to controvert the facts alleged in his pleadings are admiss-

ible. *Schradski v. Albright*, 93 Mo. 42–48. (3) The court did not err in permitting respondent's counsel to cross-examine appellants' witness as to the payment of the exposition company's debts—payment of its employes and others and of its financial condition, etc. *First.* Appellants' attorneys, by their examination of their witness in chief, made a proper cross-examination. *Second.* It was proper as tending to prove the issues, for the jury to consider in determining who made the contract—as tending to show why respondent contracted with appellants. It may have been one of the main reasons why respondent would not contract with the exposition company.

GILL, J.—During the summer of 1889 there were being erected at St. Joseph, Missouri, the buildings and improvements necessary for the conduct of a fair and exposition, and the defendants, Emery and Huffman, were directors of the company or association so engaged. The work seems to have been lagging, and in August the defendants sought the plaintiff Osborn, and induced him to take charge of the work and push to completion the construction of the amphitheater, etc., for which he was to be paid the sum of $1,000. The plaintiff performed the work in the manner, and within the time agreed on, presented his bill to the fair association, which it seems was then in financial difficulty, and the plaintiff was not paid. He thereupon brought this suit by which he seeks to charge defendants in their individual capacity as original contractors for the work. They deny any individual responsibility, and allege, and so testified, that plaintiff's contract was with the exposition association and not with them.

The action was brought in Buchanan county, but taken by change of venue to DeKalb county, where on

a trial by jury plaintiff recovered, and defendants have appealed to this court.

I.    There is some apparent force in defendants' claim that this cause ought never to have gone to the jury on the evidence; in other words, that the lower court ought to have peremptorily directed a verdict for defendants.    Quite all the circumstances point to the conclusion that plaintiff's contract to do the work was had with the exposition association; that he intended to look to it for his pay, and that at most plaintiff expected defendants to stand good for any default on the part of the association.

This seems to have been the history of the transaction, briefly told.    The fair association fearing the work would not be completed in time for the opening of the exposition in September, 1889, sought to employ some one who would push it, and on August 8, plaintiff made a proposition in writing—directed to the exposition company, not to these defendants— in which he offered to perform the services for the sum of $1,000. Defendants on August, 9, acting as they claim in behalf of the exposition, went to see plaintiff, talked the matter over with him, insisted that the price was too high, but brought plaintiff and the president of the fair company together, where the terms were finally agreed on.    This was then submitted to the board of directors who approved thereof, but the contract was never signed by the plaintiff, nor does it appear ever to have been presented to him for his signature.    After the work was completed plaintiff presented his bill to the association.    He says, however, he did this at the request of these defendants.    The only evidence tending to the support of plaintiff's claim is found in his testimony as given at the trial.    Plaintiff, being asked to state what defendants said to him when they met, testified as follows:    "They stated that they had let the

work to another party. He was about to fail in it, and they wanted to know what I would go out there for and put the building up, and get it done before the third of September. I told them I would go out and put up the building, get it done before the third of September, for $1,000, provided that they, Huffman and Emery, would see that I got my pay, that I would not take the exposition company for anything. They went away and came back again. Dr. Huffman stated that he was not one of the exposition company; that he came to me as an individual; that his interest was so great in the Wyatt Park car line and Wyatt Park property that he could not afford to not have that building done in time. They made me a proposition, offered me $700 to do the work. I told them I would not take it for a cent less than $1,000, They went away, came back in a short time and said they would let me have the work, and asked me if I would not go to the exposition grounds with them. I told them yes, and we went," etc.

Now if we were to construe this testimony as meaning that defendants only agreed to pay plaintiff if the exposition company did not, then clearly it would have been an undertaking to answer for the debt or default of another, and in order to be of any binding force must have been in writing as provided for by the statute of frauds. And since there was no writing signed by the defendants, then the defendants would have been exempt from any liability. If, however, the defendants made an original promise or contract with the plaintiff, and the plaintiff was to look to them and them alone for payment of his services thus to be performed, then the defendants should be held. However much we may here regard the preponderance of the evidence as tending to relieve the defendants of this charge, we do not think it a case so overwhelming on

the one side as to justify our interference. Nor are we prepared to say that the lower court should have sustained a demurrer to the evidence.

II. When the case was called for trial defendants filed an application for a continuance, based on the absence of one Perky, who was the president of the fair association at the time when plaintiff did the work. In the affidavit for continuance defendants set out in detail, and at some length, why they had been unable to secure the attendance of the witness. The court held the application for continuance sufficient in law, but, on the admission by the plaintiff that the witness Perky, if present, would swear to the facts set out in the affidavit, defendants were forced to trial. When at the trial the defendants came to put in their evidence, they read to the jury that portion of the application for continuance reciting what would be testified to by the absent witness, Perky, if he were present. Thereupon the plaintiff's counsel, over the defendants' objection, was permitted to read the entire affidavit— all that portion relating to the absence of Perky, where he was or had been, when he passed through St. Joseph, etc. This was followed in the testimony of the party who made the affidavit, by a sharp cross-examination by plaintiff's counsel, as to these various statements made by the affiant.

In our opinion the court here committed prejudicial error. That portion of the application for a continuance relating to the matter of diligence used by the litigant in securing the attendance of the witness is particularly addressed to the trial judge. If the court shall adjudge said affidavit sufficient, then the opposing party may force a trial if he will admit that the absent witness would, if present, swear to the facts which the affidavit may allege he would testify to. This portion then of the affidavit, and only this por-

tion, is proper to be read to the jury. Other parts relating to the alleged efforts to secure the witness are wholly irrelevant and immaterial to the issues being tried. Besides, it would work great hardship on the party applying for a continuance if such side issues were raised and tried. He is entitled to have the portion of the affidavit which sets out the matter which would be testified to by the absent witness placed before the jury just as if it were the sworn testimony of the absent witness. If this practice should be allowed, then the applicant might be deprived of the force of such evidence altogether. The jury might come to believe that there had been no diligence used to bring the witness into court, or to secure his deposition, and that the party applying for a continuance had misstated as to what such absent witness would swear to.

In our opinion, too, the trial judge erred in permitting plaintiff to introduce evidence tending to prove certain other delinquencies on the part of the fair association after the buildings had been destroyed. Among these we may mention the alleged failure to pay the band, the bicycle riders, Captain Crawford and his Indians, etc. This is all irrelevant to the issues in the case, and tended only to prejudice the defendants (who were connected with the association) in the minds of the jury. It would seem that such testimony may have done something towards securing this rather remarkable verdict.

From a careful consideration of this record, we are forced to conclude that defendants did not have a fair trial, and we shall reverse the judgment and remand the cause. All concur.