CLINTON WILT, Respondent, v, L. L. HAMMOND and J. R. HAMMOND, partners, composing the firm of HAMMOND BROTHERS, Appellants.

Springfield Court of Appeals, April 14, 1914.

1. **CONTRACTS: Waiving, Strict Compliance Temporarily: Effect as to Future.** A strict compliance with some of the terms of a contract may be waived, for the time being, by the parties thereto without such parties binding themselves to a continuance of such waiver; and they may, on a reasonable notice, demand a strict compliance with the terms of the contract in the future.

2. ———: **Changes or Additions: Must be Consideration for.** A contract cannot be modified or changed, nor can new conditions be added thereto, without a new consideration.

3. ———: **Promise Consideration for Promise: Must be Mutuality.** While one promise is a consideration for another, yet there must always be mutuality as to such promises to make the contract valid and binding.

4. ———: **Consideration: What Sufficient: Mutuality.** While the annulling of a previous contract or the substitution of a new one for it or the acting on the new contract as modified, may be a sufficient consideration to support a new or modified agreement, yet such cancelling, substitution or acting on the new contract must apply to both parties or affect the contract with reference to both.

5. **CONTINUANCE: Preventing by Admissions: Diligence: Motives for Absence: Inquiry Concerning not Admissible.** Where,

to avoid a continuance, the evidence of an absent witness as set forth in the application is admitted as and for his evidence, it is not proper to inquire during the trial as to the diligence used to have the witness present nor as to the motive of the party using the evidence in not having the witness present nor of the witness in not attending, such matters being immaterial.

6. CONTINUANCE: Absent Witness: Testimony Admitted: What May be Shown. It is proper to show on cross-examination of a party who applies for a continuance because of an absent witness, the evidence as set forth in the application being admitted as the evidence of the absent witness to avoid continuance, that the absent witness was in the employ of the applicant, for the purpose of showing the interest of the witness.

7. CONTRACTS: Breach of: Damages: Measure. In an action for damages for breach of contract to sell ice to plaintiff, for retail trade, where it was not possible or practicable to buy ice on the market so as to lessen the damages, the measure of damages would be the loss of profits under proof of the proper facts as to the certainty of such loss.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED AND REMANDED.

*T. J. Gideon & Sons* and *Mann, Todd & Mann* for appellants.

(1) Because this being a suit based in the petition upon a modification of the written contract, and there being an absolute absence of any evidence tending to show a consideration for said modification, plaintiff failed to make out his case and defendant's demurrer should have been sustained. McFarland v. Heim, 127 Mo. 333; Wear v. Schmelzer, 92 Mo. App. 323; Grath v. Mound City Roofing Tile Co., 121 Mo. App. 249; Zerr v. Klug, 121 Mo. App. 292; Moomaw v. Emerson, 80 Mo. App. 322; Wilson v. Russler, 91 Mo. App. 281; Merrill v. Central Trust Co., 46 Mo. App. 243. (2) The court erred in admitting plaintiff's exhibits E, F, G and

H, those being the statements rendered weekly by the defendants to plaintiff for ice furnished up and including May 10, 1911, for the reason that the written contract is plain and unambiguous in providing for daily payments. This being so, the court will look to the words of the contract and will not look to the interpretation made by the parties. Wetmore v. Crouch, 150 Mo. 682; Meissner v. Standard Ry. Equipment Co., 211 Mo. 112; Bader v. Chicago, M. & L. Co., 134 Mo. App. 144; Holliday v. Lesh, 85 Mo. App. 285; Smith Drug Co. v. Saunders, 70 Mo. App. 221. (3) The court erred in admitting over the objection of the defendants that portion of the affidavit for continuance relating to diligence in attempting to procure the attendance of witnesses. Osborn v. Emery, 51 Mo. App. 408; Thiele v. Citizen's Ry. Co., 140 Mo. 319. (4) The court erred in giving plaintiff's instruction No. 5 on the measure of damages. Because the true measure of damages in this case, if plaintiff was entitled to recover at all, would be the difference between the contract price and the market price at the time of the breach of contract, if there was a breach. Brown v. Trinidad Asphalt Mfg. Co., 210 Mo. 260-273.

*Neville & Gorman, W. H. Horine* and *J. T. White* for respondent.

(1) The trial court did not err in overruling defendants' demurrer to the plaintiff's evidence. An executory contract, or one partly executory, may be modified by the parties thereto, and the abandonment of the original terms of the contract is sufficient consideration for the modification. Besides, acting on the contract as modified, is an abandonment of the original contract, and is sufficient consideration. Cannon Weiner Co. v. Boswell, 117 Mo. App. 473; Pottery Co. v. Folckemer, 131 Mo. App. 105; Welch v. Mische, 154 Mo. App. 728; Chambers v. Board of Education, 60 Mo. 370; Mulliken

v. Haseltine, 160 Mo. App. 9; Tausig v. Mill & Land Co., 124 Mo. App. 209; Pressed Brick Co. v. Ban, 76 Mo. App. 380; Day v. Insurance Co., 88 Mo. 325; Scriba v. Neely, 130 Mo. App. 258; Sundmacher v. Lloyd, 135 Mo. App. 517. (2) The exhibits E, F, G and H were admitted without objection until after they were read to the jury, and then defendants objected to the form of the receipts, not the substance, objected because they were made in the name of Hammond Brothers' Ice and Cold Storage Company instead of Hammond Brothers, and for no other reason. They were properly admitted, even if they had been a timely objection. They were offered not to show how the parties interpreted the original contract, but to corroborate the plaintiff's testimony that it was charged, and that the parties acted upon it as modified and as pleaded. Cannon Weiner Co. v. Boswell, 117 Mo. 473; Welch v. Mischke, 154 Mo. App. 728. (3) It was not error to permit plaintiff to read a portion of the affidavit for continuance. The only part to which defendants specifically object in their motion for new trial is the sentence, The residence of the witness J. A. Turley is unknown to defendants at this time. Hammond who swore to that, had just testified that Turley was in his employ at the time in Kansas City, and he knew it. It was offered to contradict him on this material issue. State v. Hayes, 78 Mo. 307; Bogie v. Noland, 96 Mo. 85; Bank v. Nichols, 202 Mo. 309. (4) The instruction on the measure of damages, No. 5, was correct. It is now well settled that damage to plaintiff's business caused by the wrong doing of defendant may be recovered, and that damage may be measured by the loss of whatever profits plaintiff can prove with reasonable certainty he would realize but for the wrong done him, whether it is a violation of contract or a tort. Gildersleeve v. Overstolz, 90 Mo. App. 518, 524, 525-528, and 530-531; Shouse v. Neiswanger, 18 Mo. App. 236, 245, 250; Oth v. Railroad, 162 Mo. App. 607, 617;

Carter v. Railroad, 128 Mo. App. 57, 64; Cline v. Brock and Knight, 150 Mo. App. 431; Anderson v. Savoy, 118 N. W. 217; More v. Knox, 64 N. Y. S. 1101; Currie Fertilizer Co. v. Kish, 74 S. W. 268, 269-720; Western Union Telegraph Co. v. Delcher, 115 S. W. (Tex.) 624; Talcott v. Freedman, 113 N. W. 13; Sun Mg. Co. v. Egbert, 84 S. W. 667; Pitman v. Boch Queensware Co., 106 S. W. 724; Byson v. McCone, 53 Pac. 637; 13 Cyc. Law & Pro. 51-52-54; 35 Cyc. Law & Pro. 641, 644.

STURGIS, J.—This suit is for damages for breach of a written contract, alleged to have been modified by parol, to sell ice to plaintiff during the year 1911. The defendants were manufacturers of ice and the plaintiff was contracting the same under his trade name for sale at retail. The written contract is as follows: "April 3, 1911. Hammond Brothers, party of the first part, agrees to furnish the Clinton Wilt Ice & Fuel Co., of Springfield, Mo., party of the second part, 800 tons (eight hundred tons) of ice at $4.50 per ton; this ice to be delivered to their wagons at such places as we may designate. And party of the second part agrees to purchase of the party of the first part 800 tons (eight hundred tons) of ice at $4.50 per ton during the year 1911. Second party agrees to pay cash each day on delivery of this ice to them." The plaintiff alleges that this contract was subsequently modified "so that payment was to be made at the end of each week for ice delieved during such week." Defendants by their answer admits the making of the written contract; deny that same was modified in any way; allege that they were ready and willing to comply with their contract; that they designated Hammond Brothers' (defendants) Ice Plant in the north part of the city as the place of delivery and that the plaintiff refused to comply with said contract. By replication the plaintiff denied that the defendants' ice plant was within the contemplation of the parties as a place to be designated for delivery

of ice to plaintiff, as it was too inconvenient and not so designated in good faith and the defendants kept ice at another place in the south part of the city more convenient to plaintiff and could readily have delivered it there. On these issues the case went to a jury, resulting in a verdict for plaintiff for $1687.40.

The most important point here is as to there being any valid modification of the written contract. While this contract is spoken of as of date April 3, 1911, when it was drawn up and signed by plaintiff, the evidence is that it was not signed by defendants until two or three weeks later and in the meantime some dispute arose as to delivering ice thereunder and plaintiff had his attorneys write defendants a letter demanding a compliance with their contract. As showing a modification of the contract, plaintiff testified that in a day or two after such letter was mailed that Hammond came over to his office and they talked the matter over thoroughly and he (Hammond) said he was in bad with Bradshaw, as he had promised Bradshaw the exclusive south side territory for selling ice and that they went over everything and "agreed to go ahead with the contract and pay weekly, as we always had." Plaintiff further testified that defendants then designated the plant in the south part of town as the place to get the ice, as it was more convenient for both parties than the north side plant. There was also evidence that during April and the first part of May, the plaintiff did pay weekly on statements furnished by defendants covering each past week. There were four such statements, the amounts increasing from $9.72 to $37.80. Plaintiff also testified that defendants' bookkeeper, when he was drawing up the contract providing for daily payments, expressed his opinion that defendants would not want or demand daily payments; but it is not claimed that defendants even knew of this. The defendants' evidence on this point is a denial of any subsequent talk or promise as to payment being made weekly instead of daily,

and that the defendants had plenty of ice in April and the first part of May, 1911, and were selling to everybody and, as plaintiff was an old customer, they paid no attention to the sales, amounts of ice he was getting or the manner of payment. All parties agree that the real ice season for retail trade opens up with warm weather in May or June, and plaintiff claims that he could during such season have handled fifteen to twenty tons per day, making his daily bills much larger than his previous weekly bills. On May 9th, the defendants referring to the previous letter of plaintiff's attorneys demanding a compliance with the contract to deliver ice to plaintiff, wrote plaintiff as follows: ''We assure you that we shall fulfill our part of this agreement and hope you will comply with the same on your part. However, your failure to make payments and accept delivery as stipulated in contract will not be accepted by us. We hereby designate Hammond Bros.' ice plant at Eastern Junction as place of delivery and payment for ice furnished under this contract. And cannot agree to make delivery at any other place or accept payment otherwise than daily as per agreement. And after to-day we shall expect you to get your supply of ice from Hammond Bros.' ice plant and pay for same upon delivery.'' This letter marks the parting of the ways. No ice thereafter delivered and each party charges the other with a violation and repudiation of the contract; the defendants meaning the original contract and plaintiff meaning the modified contract. The plaintiff's instructions, following his petition, predicates his recovery on a finding that the defendants made a valid oral modification of the written contract, changing the time and terms of payment to weekly instead of daily payment. His present case must stand or fall on the validity of the modification.

There is no doubt that parties to a contract may waive for the time being a strict compliance with some of its terms without binding themselves to a continu-

ance of such waiver, and while not allowed to take advantage of the non-compliance already waived, or, perhaps, to return to a strict enforcement without notice, yet, such parties may on reasonable notice at least, either with or without valid reasons therefor, demand a strict compliance with the terms of the contract in the future. The defendants challenge the sufficiency of the evidence to show anything more than this and as not showing an intention to permanently change beyond the power of recall the terms of payment for ice yet to be delivered. We have serious doubts as to the evidence being sufficient to take this question of a change of the contract to the jury, but, waiving this, we are confronted with a proposition about which we have no doubts, to-wit, that the alleged modification is without consideration and therefore not binding.

It is evident that the claimed modification is wholly on defendants' part and in plaintiff's favor. The plaintiff's side of the contract was in no wise changed or modified; his obligation, so far as it was in defendants' favor, was the same before as after the change and he neither relinquished any right, assumed any new burden, made any new promise, or changed his situation with reference to the contract or its subject-matter. It is well settled in this State that the terms of a contract cannot be modified or changed or new conditions added thereto without a new consideration, any more than could the original contract be valid without an original consideration. This doctrine was asserted in Lingenfelder v. Wainright Brewing Co., 103 Mo. 578, 592, 15 S. W. 844, where it was held that when one who had already contracted to do work for a certain price and then exacted a modification of the contract agreeing to pay him a larger price for the same work on a refusal to carry out his first agreement, the modification was void for want of a consideration, the court remarking that, "Nothing we have said is intended as denying parties the right to modify their contracts,

or make new contracts, upon new or different considerations and binding themselves thereby." It should be noted, in answer to plaintiff's contention to the contrary, that in this case the modification was made when the contract was still executory and that the parties thereafter acted upon it. See also Wear Brothers v. Schmelzer, 92 Mo. App. 314, 322. In Macfarland v. Heim, 127 Mo. 327 333, 29 S. W. 1030, the court said: "Nothing is better settled in this State than that a subsequent agreement which does not form any part of an original contract, nor is supported by the original consideration thereof, nor by any new consideration, is a mere *nude pact*, of no force or validity. Such is the situation here. Williams 1. Williams 67 Mo. 662; McMahan v. Geiger, 73 Mo. 145, Montgomery Co. v. Auchley, 92 Mo. 126.] " In Patterson v. Insurance Co., 164 Mo. App. 157, 163, 148 S. W. 448, the plaintiff proved that while an insurance policy provided against the property being vacant, the defendant's agent afterward agreed that he would issue a vacancy permit whenever the house became vacant, and the court held this agreement void for want of a new consideration, saying: "Parties who make a contract have the power to modify it by a subsequent agreement, but there must be a sufficient consideration for the modification to give it contractual force." In Merrill v. Central Trust Co., 46 Mo. App. 236, 244, the court said: "And if said original contract was attempted to be rescinded, changed or modified in any way, it could only be accomplished by a new agreement supported by some new consideration." This same doctrine is announced in many cases, some of which, at least, will show that the attempted modification was made at a time when the contract was still executory. [Grath v. Roofing Tile Co., 121 Mo. App. 245, 249, 98 S. W. 812; Moomaw 1. Emerson, 80 Mo. App. 318, 322; Wilson & Son v. Russler & Gnagi, 91 Mo. App. 275, 281.] Such is the weight of authority. [3 Elliott on Contracts, sec. 1989.]

As to what is a consideration for a contract, whether original or a modification, the court said in Scriba v. Neely, 130 Mo. App. 258, 109 S. W. 845: "In bilateral contracts the promise of each one of the parties is a sufficient consideration for the promise of another. . . . Consideration means not so much that one party is profited as that the other abandons some legal right in the present, or limits his legal freedom of action in the future as an inducement for the act or promise for the first. It does not matter whether the party accepting the consideration has any actual benefit thereby or not—it is enough that he accepts it and that the party giving it does thereby undertake some burden or lose something which in contemplation of law may be of value." In German v. Gilbert, 83 Mo. App. 411, 416, the rule is stated thus: "That in order to support an action the promise must have been made upon legal consideration moving from the promisee to the promisor; there must be either a benefit to the maker of the promise or the waiver of some legal right, a loss, trouble or inconvenience to, or a charge or obligation resting upon the party to whom the promise is made." While one promise is a consideration for another, and such is the usual consideration for executory contracts, yet, there must always be mutuality as to such promises to make such contracts valid and this applies to a modification of a contract the same as to the original.

Plaintiff cites and relies on a number of cases where it is stated generally that the annulling of a previous contract or substitution of a new one for it, or the acting on the new contract as modified, are each a sufficient consideration to support the new or modified agreement. 'We think there will be found no conflict between such cases and the ones we have above cited, but that the "cancelling," or "substitution," or "acting" must apply to both parties or affect the contract with reference to both. [Welch v. Mischke, 154 Mo.

App. 728, 734, 139 S. W. 36; Scriba v. Neely, 130 Mo. App. 258, 261, 109 S. W. 845.] In a case very similar to this one, Zerr v. Klug, 121 Mo. App. 286, 292, 98 S. W. 822, the court held that where a contract for the sale of goods to be paid for on delivery was so modified by subsequent agreements as to be payable by a note to be given at a later time, the modification was purely one-sided and without consideration. What the court there said is applicable to this case with a mere change of names. ''Klug parted with nothing and appellant received nothing as an inducement to substitute for the original agreement a new one postponing the maturity of the debt to a certain time and then take a note for it. . Though Zerr agreed to wait for such a note, the memorandum does not show Klug bound himself to give one; though, no doubt, Zerr's agreement to wait longer for his money would have been enough to support the substituted agreement as against Klug. But what was there to uphold it against Zerr? What did he get or Klug lose? In another case, where the facts are essentially the same as this one, Warren v. Mayer Mfg. Co., 161 Mo. 112, 61 S. W. 644, one party undertook to prove a verbal modification of an unperformed contract for the sale of old iron so as to change the time for making payment and the court held such new agreement was both without consideration and within the statute of frauds. That case has been approved many times. [See Ives v. Kimlin, 140 Mo. App. 293, 124 S. W. 23; Moots v. Cope, 147 Mo. App. 76, 85, 126 S. W. 184; Reigart v. Coal & Coke Co., 217 Mo. 142, 166, 177 S. W. 61.] This last point, however, has not been raised in the present case. It results that plaintiff cannot recover upon the modified contract and the present judgment cannot stand.

There is some evidence, both direct and circumstantial, that defendants refused to comply with their original contract. It may be that, on an amended petition, a breach of the original contract may be estab-

lished and we will reverse and remand the case. In view of a possible new trial, it is proper to say that much is said in the course or argument as to defendants' lack of good faith in insisting on a strict compliance with the contract, in that such strict compliance imposed hardships on both parties, both in requiring daily payment and in designating an unnecessarily inconvenient place to deliver the ice. These are matters that should have been guarded against in making the contract and it is obvious that defendants' motives for requiring a strict compliance with the contract are immaterial in law on the question of defeating his right to do so. Such evidence, however, might have a bearing on the question of whether the defendants were merely requiring a strict compliance with the contract or were intentionally evading and violating it themselves. It might also have a bearing on the question of whether defendants' refusal to deliver ice on one or more particular occasions uner the strict terms of the contract, should this be proven, was unavoidable and excusable or could be taken by plaintiff as showing a fixed purpose on defendants' part not to furnish ice even on a strict compliance with the contract by plaintiff and making further efforts to get ice useless.

We might also say that the court erred in permitting plaintiff to read in evidence parts of defendants' application for a continuance of the case. When, in order to avoid a continuance of a case, the evidence of an absent witness as set forth in such application is admitted as and for his evidence, it is not proper to inquire during the trial as to the diligence used to have the witness present nor as to the motive of the party using the evidence in not having the witness there or of the witness in not attending. Such matters are not material. [Osborn v. Emery, 51 Mo. App. 408; Thiele v. Railroad, 140 Mo. 319, 41 S. W. 800.] It is true the plaintiff was entitled to ask defendant on cross-exam-

ination if the absent witness was in their employ, as showing the witness's interest in the case, but when the defendant answered in the affirmative and incidentally stated the place of his employment there was no need to show that in the application for continuance the defendant swore that the whereabouts of the witness was *then* unknown. This was not material and was merely prejudicial.

We will not discuss the measure of damages, as the same facts may not be presented again, further than to say that, if it was not possible or practicable to buy ice on the market, either in Springfield or to be delivered there for plaintiff's use, on such terms as to lessen the damages claimed, then the measure of damages could not be the difference between the market price in Springfield and the contract price but would be the loss of profits under proof of the proper facts as to the certainty of such loss. [Gildersleeve v. Overstolz, 90 Mo. App. 518; Shouse v. Neiswaanger, 18 Mo. App. 236; Wilson & Son v. Russler & Gnagi, 91 Mo. App. 275; Morrow v. Railroad, 140 Mo. App. 200, 123 S. W. 1034; Holloway & Bro. v. White-Dunham Shoe Co., 151 Fed. 216.] Other alleged errors need not be mentioned, as they will not likely recur. For the errors above mentioned, the case will be reversed and remanded.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.