# S. E. DAVIS, Respondent, v. CHAS. F. LUEHRMANN HARDWOOD LUMBER COMPANY, Appellant.

### Springfield Court of Appeals, December 6, 1922.

1. **EVIDENCE:** Buyer Having Sent Seller Order "Confirming Order" Previously Given, Could not Claim that Subsequent Order was Substitution for Previous Order. In action for price of lumber, the buyer having sent seller an order stating on its face that it was "confirming order" previously given, could not claim that such order was a substitution for the previous order.

2. **CONTRACTS:** Placing Additional Burden on Seller Without Consideration Therefor in Substituted Contract, Held Void For Want of Consideration. Where seller, after executing contract, entered into a subsequent contract similar to the previous contract, with the exception that it placed an additional burden on the seller, without additional consideration to seller, if regarded as a substitution for the previous contracts, was void for want of consideration.

3. **PRINCIPAL AND AGENT:** Whether Buyer's Agent Had Authority to Accept Lumber and Take a Bill of Sale Therefor from Seller, and Whether Buyer's Agent Had Authority to Accept Lumber not Included in Contract, Held for the Jury. In action for price of lumber, evidence *held* sufficient for submission of question whether buyer's agent had authority to accept the lumber and take a bill of sale therefor from the seller, and whether buyer's agent had authority to accept lumber not included in the contract.

4. **APPEAL AND ERROR:** Instruction Held Erroneous as Assuming Authority of Agent. In an action for the price of lumber involving the issue as to whether buyer's agent had authority to buy lumber of a different grade from that provided for in previously executed contract betwen the parties, an instruction that buyer was bound, if jury believed that buyer had by its agent bought lumber of different grades than that called for by the contract, *held* erroneous in that it assumed that the agent had authority to buy lumber of different grade.

5. **MEASURE OF DAMAGES.** Seller, who treated lumber as his own property by execution of chattel mortgage thereon, after buyer's agent had accepted the lumber and buyer had repudiated agent's act and had refused to pay therefor, could not recover the purchase price, but could recover merely the difference between the contract price and the value of the lumber.

**6. BREACH OF CONTRACT:** Measure of Damages. Where owner of standing timber, engaged in the business of sawing timber into lumber and selling it on the market, was prevented from sawing and delivering lumber under a contract by the buyer's purchase thereof, he could recover as damages the loss of profits ascertained by taking the value of the timber in the trees and adding the cost of manufacturing it into lumber and placing it on board cars at certain place as provided by contract, and deducting such sum from the contract price.

Appeal from Douglas County Circuit Court.—*Hon. Fred Stewart,* Judge.

REVERSED AND REMANDED.

*J. S. Clarke* and *Rassieuer & Long* for appellant.

*A. M. Curtis* and *Lamar & Lamar* for respondent.

COX, P. J.—Action for damages for breach of contract. Verdict and judgment for plaintiff and defendant has appealed.

The plaintiff was the owner of a large amount of oak timber on land in Douglas County and was engaged in the business of sawing this timber into lumber and selling the same on the market. The defendant was a dealer in hardwood lumber in the City of St. Louis. In January, 1920, John Owens, a purchasing agent of defendant, visited plaintiff at his residence in Douglas County for the purpose of purchasing oak lumber and as a result the following contract was executed:

"Greenbrier, Mo. Jan. 16, 1920.
"Mr. S. E. Davis:

"You will enter our order for approximately 400 thousand feet of 1″ & 2″ Oak Lumber all to be delivered in the year 1920. Shipment to begin about Arp 1st 1920. We will pay you for 2″ By wide cut 1/8 heavy for shrinkage $85 F. A. S. $55 No. 1 Com $30
By wide
No 2 Com and for 1″ lumber $75 F. A. S. $52 No. 1 Com $30 No 2 Com this lumber is to be placed on sticks at-

the mill from time to time until shipping dry and we will advance you on estimate from time to time in lots of 40 to 50 thousand at each time $25 for these amounts on stick all lumber to be cut standard length 10-12 & 14-16 feet and cut plump thickness and to be moved out to the Rail Road as soon as shipping dry and the above prices is to be paid for all lumber F. O. B. cars Norwood, Mo. Frisco R. R.

"S. E. Davis<br>
"Chas. F. Luehrmann Lbr. Co.<br>
"Per John Owens."

This contract was forwarded by Mr. Owens to defendant and on the next day defendant wrote plaintiff asking that he change the specifications so as to complete the shipments by August 1st. This the plaintiff refused to do because he thought he would not be able to get the lumber all out by that date. The defendant, then, on January 30th, wrote plaintiff enclosing an order similar in language to the one taken by Mr. Owens but with two additions, one providing that not over twenty-five to thirty per cent. of the lumber should be No. 2 common and the other providing that the grading should be done in defendant's yards at St. Louis. This order also contained the following: "Confirming order given our Mr. Owens January 16, 1920." The plaintiff wrote defendant refusing to accept this order unless the provision for grading in defendant's yards in St. Louis was eliminated. Defendant answered authorizing plaintiff to erase that provision and then stated: "Mr. Owens is going to inspect this stock at the mill when loaded on cars and his inspection will be final." Plaintiff then replied accepting this order. The only difference between this order and the one of January 16, taken by Mr. Owens in person, was the provision that there should not be over twenty-five to thirty per cent. of No. 2 common oak lumber furnished in filling the order. After plaintiff had sawed over 49,000 feet of lumber he asked that Mr. Owens be sent to examine it and that defendant make the advancement of $25 per thousand feet as the contract pro-

vided.  Mr. Owens went and looked at the lumber on July 16, 1920, and ascertained the number of feet then sawed to be 49,865 but did not grade it or ascertain the number of feet of each grade then in the piles of lumber examined.  He took from plaintiff a bill of sale in which it was recited that for value the lumber was sold and delivered to defendant and a description given of each pile of lumber which recited the dimensions of the lumber and the number of feet in each pile but contained no specification as to grades.  It did show that two piles were only eight feet in length while the shortest number provided for in the contract was ten feet.  Mr. Owens then had painted on each pile "This is the property of the Chas. F. Luehrmann Lumber Company."  This bill of sale was sent to defendant by Mr. Owens.  The defendant then wrote plaintiff the following letter:

"July 19, 1920

"Mr. S. E. Davis,

"Norwood, Mo.

"Dear Sir:

"We have a bill of sale sent in signed by you for some 1" and 2" Oak which was to have applied on our contract and together with that, we have a letter from Mr. Owens stating he was very much disappointed to find that this stock will not run at all according to the contract which we have with you.

"By referring to this order dated January 30, 1920, you will find it states stock is to be put on sticks until dry and is to be cut 10', 12', 14' and 16' plump Common. Mr. Owens states in his letter this stock will run thirty per cent #3 Common and sixty per cent #2 Common leaving only ten per cent #1 and 1st & 2nd, which we would not care to take on this contract.

"In addition the bill of sale shows out of 49,000 there is 3100' 8' and 23,000' 10', hence we would prefer having you cancel this order.

"Kindly acknowledge receipt by return mail.

"Yours truly,

"Chas F. Luehrmann Hdw. Lbr. Co.

"T. W. Fry, Sec'y."

Plaintiff refused to cancel the order and insisted on being paid the advancement of $25 per thousand feet as provided by the contract. Some other correspondence followed in which defendant refused to take any lumber of a grade not provided in the contract or make any advancement on the lumber covered by the bill of sale and returned the bill of sale to plaintiff. The plaintiff ceased sawing the lumber and filed this suit.

The petition is in two counts. The first declares on a breach of the contract of January 16, 1920, and charges that defendant refused to take and pay for lumber after it was sawed under the contract. It also charges in the same count that when Mr. Owens, the agent of defendant, examined the lumber and took the bill of sale in July, 1920, he agreed to take all lumber then sawed that was of different grade from that provided in the contract at $20 per thousand feet and that he accepted for defendant all the lumber then sawed and covered by the bill of sale and asked pay for the lumber at the contract price.

The second count based damages upon the loss of profits on the amount of lumber provided for by the contract which it was alleged plaintiff was prevented from sawing and delivering by defendant's breach of the contract.

The answer denies that the contract of January 16, 1920, declared upon by plaintiff was executed by it or by any one having authority to execute it for defendant. Defendant then pleads that the contract of January 30, 1920, was executed and that it was under that contract that lumber was sawed and that plaintiff did not comply with the requirements of that contract and no payments were made for that reason and that it was plaintiff and not defendant that had breached the contract.

Plaintiff, while on the witness stand, admitted that after defendant had refused to take and pay for the lumber which he claimed Mr. Owens had accepted for defendant, he, the plaintiff, had executed two chattel

mortgages upon this same lumber to secure the payment of borrowed money.

In the instructions to the jury upon the first count, they were told that if they believed that defendant had by its agent accepted the lumber sawed and had taken a bill of sale thereof from plaintiff, that bound the defendant and it could not afterward refuse to take the lumber and pay for it and on finding those facts they should find for plaintiff and assess his damages at the amount the contract required defendant to pay for the lumber and further that if at the time he accepted the lumber the agent of defendant bought the lumber then in the piles that was of different grades than that called for by the contract, the amount he agreed to pay for that should be added.

As to the second count, the instructions told the jury that if they should find that defendant had breached the contract, then in assessing the damages, they would fix it at the price agreed to be paid for the lumber less what it would have cost plaintiff to have manufactured the remainder of the lumber and to have placed same on board cars at Norwood, Missouri.

Appellant insists that the order or contract of January 30 annulled the one of January 16 and since plaintiff declared on the one of January 16th, he has no cause of action and cannot recover. This position is not tenable. The order of January 30, 1920, was sent to plaintiff by defendant for his acceptance and that order stated on its face that it was "Confirming order given our Mr. Owens January 16, 1920." It did not ask then that this order be substituted for the one of January 16th but asked its execution as a confirmation of the one of the 16th. Having taken that position then, it cannot change front now. If, however, this order of January 30th, is to be regarded as a substitution for the one of the 16th, it cannot stand for want of consideration. It contained no provision requiring defendant to do anything it was not required to do by the contract of the 16th. The only change made was to place an additional burden on plain-

tiff by providing that the lumber to be furnished should
not contain over twenty-five to thirty per cent. of No. 2
Common.  Plaintiff was to receive nothing for placing
that restriction upon himself, hence that restriction was
not binding upon him for want of consideration to sup-
port it.  When that provision is eliminated, the two con-
tracts are identical and there was no substitution.  It has
been often held in general terms by the Courts of Ap-
peals in this State that the cancellation of a former con-
tract is a sufficient consideration for the execution of a
contract to be substituted for it but we think the rule
is now well established that if, in the substituted con-
tract, there is no change as to one party but the only
change is to add to the burden of the other party, the
new contract is without consideration as to that party
and cannot stand against his protest.  It will not be
necessary to review at length the cases dealing with
this question but as sustaining the rule as we have stated
it, we refer to the following: Hunter Land & Develop-
ment Company v. Watson (by this Court), 236 S. W.
670; Witt v. Hammond, 179 Mo. App. 406, 165 S. W.
362; Mt. Vernon Mfg. Co. v. Hirsch Rolling Mill Co.,
285 Mo. 669, 227 S. W. 67.

Defendant assails instructions for plaintiff under
the first count upon several grounds.  It first contends
that there is no evidence that Mr. Owens had authority
to accept the lumber at the time he viewed it, and took
the bill of sale.  This contention is answered by defend-
ant's letter to plaintiff of February 4, 1920, in which it
is stated "Mr. Owens is going to inspect this stock at the
mill when loaded on cars and his inspection will be
final."  Mr. Owens was sent to examine this lumber and
did examine it and if plaintiff's testimony is to be be-
lieved, he accepted it and took a bill of sale for the pur-
pose of passing title to defendant.  That was sufficient
to warrant the submission of that question to the jury.
It is also insisted that there is no evidence that Mr. Owens
had authority to buy lumber not included in the contract
and hence his agreement, if made with defendant, that

defendant would take and pay $20 per thousand feet for lumber of different grade than provided in the contract was not shown to have been authorized and that element of damage should have been omitted from the instructions. We find that Mr. Owens testified: "I had the right to buy lumber with or without the approval of the company but I had no authority excepting directly through them. From time to time when I would see a lot of lumber, I would buy it without their approval." He also testified that in making purchases he usually sent the contract in for the approval of defendant and that he did that in this case but the testimony of plaintiff contradicts that and hence it was a question for the jury. The instruction, however, assumed that Mr. Owens had the authority to buy the lumber that was of different grade from that provided for in the contract. This was error. If Mr. Owens did not have authority to buy that lumber, then the defendant had the right to reject it and return the bill of sale taken by Mr. Owens and was justified in refusing to make the advance payment provided for by the contract and should the jury have found that Mr. Owens did not have authority to buy such lumber not provided for in the contract, then, under the evidence as preserved in this record, the verdict should have been for defendant.

Plaintiff's instructions are also erroneous on the measure of damages. True, a breach by defendant after an authorized acceptance by the agent of defendant of the lumber sawed would ordinarily entitle plaintiff to treat the lumber as belonging to defendant and authorize a suit for the contract price, yet, when plaintiff admitted on the witness stand that after the alleged breach by defendant he had treated the property as his own and had transferred it by executing a chattle mortgage upon it, he deprived himself of the right to sue for the full purchase price. Having conveyed it by chattel mortgage, his position was the same as it would have been if he had sold it outright. Under that state of facts, his measure of damages would not be the contract price but would

be the difference between the contract price and the value of the lumber which he, by his own act, had elected to keep.

Under the second count of the petition, the measure of damages would be the loss of profits. This could be ascertained by taking the value of the lumber in the trees and adding to that the cost of manufacturing it into lumber and placing it on board the cars at Norwood as provided by the contract and then deducting that sum from the contract price. In the instructions under the second count the value of the lumber in the trees was omitted. This was error.

For the reasons stated the judgment will be reversed and the cause remanded. *Farrington* and *Bradley, JJ.*, concur.